JONAS H. COOK *et al.* v. EMMA D. McCORD *et al.*

(Filed January 12, 1904.)

**OCCUPYING CLAIMANT'S LAW—Does not Apply, When.** An unsuccessful contestant for a townsite lot, who, during the pendency of the contest, has made valuable and lasting improvements, in good faith, thereon, and who, at the termination of the contest, is in possession of the lot, is not entitled to hold possession thereof until his improvements are appraised and paid for under the occupying claimant's law of Oklahoma; as the enforcement of such law in such a case would be an interference with the primary disposal of the soil, and therefore in conflict with the organic act of the Territory of Oklahoma.

(Syllabus by the Court.)

*Error from the District Court of Logan County; before Jno. H. Burford, Trial Judge.*

*Geo. W. Buckner* and *Cotteral & Hornor,* for plaintiffs in error.

*Dale & Bierer,* for defendants in error.

Opinion of the court by

BURWELL, J.:　Jonas H. Cook and Bennett & Pitts were adverse claimants for lot 40 in block 55 in the city of Guthrie.

Subsequently Bennett & Pitts conveyed their interest (if any they had) in the lot, to Rush A. McKay.    A hearing was had between Mr. Cook and Rush A. McKay before the townsite board and the interior department, and the lot finally awarded to Mr. Cook, and the contest case was closed.    Meanwhile Rush A. McKay had deeded the lot to one Nix, who, on September 27th, 1893, conveyed it to Emma D. McCord, and she, on May 19th, 1896, commenced an action in the district court of Logan county praying that Cook be decreed to hold the legal title to this lot for her use and benefit.    On the trial the judgment was in her favor.    An appeal was taken therefrom to this court, where the judgment of the lower court was reversed and the case remanded.    When the mandate reached the district court, counsel for Mr. Cook filed a motion that judgment be rendered in conformity with the mandate of the supreme court, and the attorneys for Emma D. McCord filed an application praying that they be granted the benefit of the occupying claimants' act of the Territory of Oklahoma; and upon the hearing of these two applications the court rendered judgment adjudging Cook to be entitled to possession of the land, but also adjudging Emma D. McCord to be entitled to the benefit of the occupying claimant's act; and directed that no process issue evicting Emma D. McCord from the lot until after the plaintiff had paid her the full value of all lasting and valuable improvements made thereon by her, or by the person or persons under whom she held the said property.

This record presents the one question:  Is an adverse claimant for a town lot, who is unsuccessful and who, pending the contest, has made valuable and lasting improvements on such lot, entitled to the benefit of the occupying claim-

ant's law of this territory? A careful review of the law pertaining to the matter compels us to decide the question in the negative. It is true that congress in 1874 enacted a law to the effect that, when an occupant of land, having color of title, in good faith, has made valuable improvements thereon and is, in the proper action, found not to be the rightful owner thereof, such occupant shall be entitled, in the federal courts, to all of the rights and remedies; and upon instituting the proper proceedings, such relief as may be given or secured to him by the statutes of the state or territory where the land lies, although the title of the plaintiff in the action may have been granted by the United States after such improvements were made; and it is contended that the territorial legislature, in 1890, enacted an occupying claimant's law, which gives to one who, under color of title, has made valuable and lasting improvements on land, in good faith, and is in possession of such land, the right to occupy the same until his improvements are assessed and paid for. Conceding this all to be true, such a one must fail, because the law would be void in so far as it applies to improvements made upon town lots or government land while in contest before the townsite board or the interior department; for the act of 1874 is in conflict with the organic act of the Territory of Oklahoma, which provides: "That the legislative power of the territory shall extend to all rightful subjects of legislation not inconsistent with the constitution and laws of the United States; but no law shall be passed interfering with the primary disposition of the soil." And the act of 1874 being in conflict with the organic act of the territory, it is, not merely by implication, but expressly repealed.

Sec. 28 of our organic act provides:

"That the constitution and all the laws of the United States not locally applicable shall, except so far as modified by this act, have the same force and effect as elsewhere within the United States; and all acts and parts of acts in conflict with the provisions of this act are as to their effect in said Territory of Oklahoma hereby repealed: Provided, That sec. 1850 of the revised statutes of the United States shall not apply to the Territory of Oklahoma."

Now, if the act of 1874 be construed as applicable in this territory, then the legislature can, as to improvements on government land, interfere with the primary disposal of the soil, and the contention of counsel for appellee, that the occupying claimant's act of this territory is not an interference with the primary disposal of the soil, because it is not sought to be enforced until after the title has passed from the government, although ingenious, is not in harmony with the spirit of section six of our organic act.

. Congress intended that the legislature should not in any way interfere with the primary disposition of the soil, and has so said in no uncertain terms, and has expressly repealed the act of 1874, so far as this territory is concerned; and it cannot be argued that the right of an occupying claimant to remain on land after the government has deeded it to one entitled thereto, and exact from him payment for his improvements, is not an interference with the disposal of the soil by the general government. The one who has earned the legal title has also acquired the legal right to possession. The government by its conveyance of the legal title, also conveys the right of occupancy, and he who makes improvements upon government land or a town lot pending a contest over the

same, does so at his peril. The doctrine here announced is supported by the authorities. In the case of *Chavez v. Chavez de Sanchez,* 32 Pac. 146, the supreme court of New Mexico said: ·

"There then remains for our consideration the fifth assignment of error which is that the court erred in excluding tendered proof of the value of the land in controversy, and the improvements made thereon by the plaintiffs in error. It is, urged that under section 2581, comp. laws N. M., plaintiffs in error have a right to recover the value of the improvements made by them upon the land, and have a lien upon the land' for the same. We think not. So far as this case is concerned the land embraced in the homestead patent must be regarded· as being part of the public domain at the time the homestead entry was made. There could be no rightful possession in plaintiffs in error, and the law was not intended to be available in behalf of a person wrongfully in possession; nor does this statute apply to this case for the further reason that such a lien would interfere with the disposition of the public lands of the United States. The power of congress in the disposal of the public domain cannot be interfered with or its exercise embarrassed by any state (or territorial) legislature, nor can such legislation deprive the grantees ·of the possession and enjoyment of the property granted. (*Gibson v. Chouteau,* 13 Wall. 92; *King v. Thomas,* [Mont] 12 Pac. Rep. 865.")

The case of *Gibson v. Chouteau,* 13 Wall. 92, lays down the same rule. In that case the unsuccessful litigant for public lands commenced suit for the possession thereof, and his adversary interposed the statutes of limitation of Missouri (ten years) as a defense, he having occupied the land for that length of time prior to the commencement of the suit. The court said:

"The same principle which forbids any state legislation interfering with the power of congress to dispose of the public property of the United States, also forbids any legislation depriving the grantees of the United States of the possession or the enjoyment of the property granted, by reason of any delay in the transfer of the title after the initiation of proceedings for its acquisition.   *   *   *   *   With the legal title, when transferred, goes the right to possess and enjoy the land, and it would amount to a denial of the power of disposal in congress if these benefits, which should follow upon the acquisition of the title, could be forfeited, because they were not asserted before that title was issued."

This court held in *Woodruff v. Wallace,* 3 Okla. 355, and *Calhoun v. McCormack,* 7 Okla. 349, that an unsuccessful contestant for a homestead could not take advantage of the occupying claimant's act when an action was commenced for his removal from the land, expressly holding that to give force to our occupying claimant's law, as applied to such a case, would be an interference with the primary disposal of the soil.   It seems to us that the law upon this question is plain; and it is also the settled law of the territory that improvements made upon a town lot while it is in contest, are improvements upon government land, and before its primary disposal.   (*McDaid v. Oklahoma,* 150 U. S. 218; *Bockfinger v. Foster,* 62 Pac. 799.)

A number of other cases have been cited by counsel for the respective parties, and we have examined them, but do not care to comment upon them further.   The general principles announced in them support the position here taken. It is true that the act of 1874 and the organic act of the territory are both acts of congress, and it might be said that they should both be given force and effect.   If this might be

done the occupying claimant's law of the territory would not be in conflict with any of the laws of the United States. A careful analysis of the organic act, however, will show that it not only repeals all acts of congress which are in conflict with it, but also prohibits the territorial legislature from passing any law which will interfere with the primary disposal of the soil. The law cannot be enforced in this kind of a case.

For the reasons herein stated, the judgment of the lower court is hereby reversed, in so far as it gives the defendant in error any right under the occupying claimant's law of the territory; and the case is hereby remanded with directions to the lower court to proceed in conformity with the views herein expressed, and in conformity with the former judgment of this court in this case, at the cost of the defendants in error.

Burford, C. J., who presided in the court below, not sitting; Pancoast, J., dissenting; all the other Justices concurring.