HENRY H. BOCKFINGER V. JOHN FOSTER, W S. ROBERT-
SON AND A. C. SCHNELL *as Townsite Trustees, Board
No. 6, Oklahoma Territory.*

(Filed Sept. 5, 1900.)

1. JURISDICTION DEFINED. Jurisdiction is the authority by which
courts and judicial officers take cognizance of and decide cases.
Power to hear and determine a cause, if a court has jurisdiction
of the persons to an action, and the cause is the kind of a cause
triable in such court, it has jurisdiction of the subject of the ac-
tion, and the power to render any rightful judgment therein.

2. RESULTING TRUST—*Cestuis Trust Que Necessary Parties, When.* In
an action against townsite trustees appointed by the secretary of
the interior under the act of congress of May 14, 1890 (26 Stats. at
Large, 109, Chap. 207), and to whom patent has issued, to declare a
resulting trust in favor of a plaintiff who claims adversely to
the townsite entry, even if such action would lie, the townsite lot
claimants are necessary parties to the action.

3. TOWNSITE TRUSTEES CANNOT BE SUED, WHEN—*Resulting Trusts—
Petition—Demurrer to Sustain,    When.* It is a universal rule that
courts will not interfere with the actions of the department of the
interior in its disposition of the public lands, or decree to whom
patent or deed shall issue. After the government has parted with
the legal title, and the secretary of the interior has lost all sup-
ervisory control over such land, a party who claims a prior and
superior right thereto may, under certain circumstances, maintain
an action against the patentee to declare him a trustee.for the ben-
efit of such plaintiff; but townsite trustees appointed under the
Act of May 14th, 1890, are officers or agents of the government,
and the issuance of patent to them for a townsite and the recording
of same    will    not    operate    to    divest    the    department    of
the    interior    of    all    control    over    the land embraced there-
in. The conveyance of a townsite to such trustees is for a parti-
cular use named by congress, and the courts cannot intercept the
legal title in the hands of the government's agents. Adverse claim-
ants for such townsite must wait until title has lodged in the
persons or put to the uses directed by congress. Therefore such
townsite trustees cannot be adjudged by a court of equity to be
trustees for the use and benefit of one claiming adversely to the
trust created by the act of congress under which patent was is-
sued to them; and a petition which discloses on its face that

the trustees have not conveyed the title by deed, but still retain the same, fails to state a cause of action for a resulting trust.

(Syllabus by the Court.)

*Appeal from the District Court of Logan County; before Frank Dale, District Judge.*

*Cotteral & Hornor* and *J. R. Keaton,* for appellant.

*Horace Speed,* for appellees.

Opinion of the court by

BURWELL, J.: This action was commenced in the district court of Logan county by Henry H. Bockfinger against John Foster, W. S. Robertson and A. C. Schnell, as the trustees of townsite board No. 6 for Oklahoma, to declare a resulting trust. The property involved is 160 acres of land located in the city of Guthrie, being the S. W. ¼ of sec. 8, twp. 16 N., R. 2 W. I. M., or the south ½ of what was formerly known as West Guthrie.

To the plaintiff's petition a demurrer was filed on the following grounds:

1. That the complaint did not state a cause of action against the defendants.

2. That the district court had no jurisdiction of the subject of the action.

3. That said court had no jurisdiction of said defendants in their capacities as trustees of townsite board No. 6, as set out in the complaint, and

4. That there was a defect of parties defendant, in that each and every of the lot claimants upon the land described in the complaint were not made parties defendant in the action.

On hearing of the demurrer it was sustained by the court, and the plaintiff thereupon electing to stand upon his complaint, judgment was rendered against him for costs, and it was adjudged that he take nothing by his action. From this judgment the plaintiff appealed to this court.

1. We will not consider the different grounds of the demurrer in the order stated, but will take up the second point first, for if the court has no jurisdiction of the subject of the action, it would be useless labor, so far as this case is concerned, to pass upon the other points. This identical question, however, was squarely passed upon by this court in the case of *Parker v. Lynch*, 7 Ok. 631, and in that case it was held that if a court has jurisdiction of the persons to an action, and the cause is the kind of a cause triable in such court, it has jurisdiction of the subject of the action, and power to render any rightful judgment therein. As we discussed this question at some length in the case just cited, we shall not again review the authorities and give reasons for the rule announced, as we regard the question as settled in this court. The district court is the only court in which this kind of an action can be tried, and the parties who were made parties to the action were all before the court. Therefore the court had jurisdiction of the subject of the action. It is immaterial as to whether or not the court can render the judgment prayed. If it can legally take hold of the matter at issue and determine the respective rights of the parties, it has jurisdiction regardless of what the judgment under the law and the facts must be.

2. It is next contended that there is a defect of parties defendant, that the occupants of the lots should have

been made parties to the action. The question is also raised that this suit will not lie against the townsite trustees at all, and this point we will determine later, but for the present it will be assumed that the action may be maintained.

It is undoubtedly the general rule, that where one brings an action against a trustee of an express trust to have a court of equity declare a resulting trust in his favor, the *cestui que trust* should be made a party defendant, so that he may show any reasons he may have why the trust should be executed pursuant to the terms of the deed, and so that he may submit to the court his equities, and have them compared and measured with those of the plaintiff. (*Sears v. Hardy et al.*, 120 Mass. 524.) But there are many exceptions to this general rule, and counsel for plaintiff insist that the case at bar falls within one of these exceptions; that where one claims in opposition to the trust, or where his rights antedate the creation of the trust, the beneficiary of the deed is not a necessary party, and in support of this position they cite, *Vetterlien v. Barnes*, 8 Sup. Court Rep. 441.

The case just cited lays down the general rule, and then makes an exception, and quotes from other authorities in support thereof. The learned judge who wrote the opinion expressed the views of the court in the clearest of terms, but we fear that counsel have failed to analyze his words and comprehend their exact meaning. In the first place the Vetterlien-Barnes case was not like the one at bar. The principle involved, while apparently similar, was, in fact, quite different. Theodore H. Vetterlien, Bernard T. Vetterlien, Theodore J. Vetterlien and Charles Meurer were doing business under the name and style

of Vetterlien & Co. in the city of Philadelphia. One J. Kinsey Taylor, became indebted to the firm in a large sum, and to secure it he caused his life to be insured, and assigned the policies to Theodore H. Vetterlien, who was a member of the firm. In July of 1868 Meurer retired from the firm, at which time Taylor's indebtedness amounted to about $50,000. In December of the same year Theodore J. Vetterlien retired from the firm also. The two remaining partners continued the business. In July of 1870, these policies were assigned by Theodore H. Vetterlien to Bernard T. Vetterlien and Theodore J. Vetterlien, as trustees of the wife and children of the assignor. In February of 1871, Theodore H. and Bernard T. Vetterlien were adjudged bankrupts on a petition filed December 28, 1870. Taylor died July 1, 1871. Proof of death was made by the trustees, and they were proceeding to collect the insurance due on the policies when suit was brought by Barnes, the assignee in bankruptcy, against the assignees who held the legal title to the policies, to enjoin them from collecting the same, claiming that the policies were assigned by Theodore H. Vetterlien in fraud of the creditors of the firm, as Taylor's indebtedness to the firm at the time of the assignment of the policies for the benefit of the assignor's wife and children had not been paid, and was in excess of the face of the policies. The question arose as to whether or not the *cestuis que trust* were necessary parties to the suit, and the court held that they were not. The question in that case was one of fraud against the creditors of the grantor, and the creditors' rights to the assets of the insolvent firm existed prior to the creation of the trust, and the trustee had full authority by implication, if not by express language, to represent the *cestuis que trust* in

everything connected with the collection of the policies, and they would be bound by their acts; and that is one of the distinctions made in that case; for the court quoted from *Kerrison v. Stewart*, 93 U. S. 155, as follows:

"But in a suit brought against a trustee by a stranger for the purpose of defeating the trust altogether, the beneficiaries are not necessary parties if the trustee has such powers or is under such obligations with respect to the execution of the trust that those for whom he holds will be bound by what is done against him as well as by what is done by him. In such cases of representation by trustees, the beneficiaries will be bound by the judgment unless it is impeached for fraud or collusion between him (the trustee) and the adverse party."

And again, in the same opinion, after stating the general rule:

"But the rule is different where the claim of the plaintiff antedates the creation of the trust and the suit is brought not in recognition or furtherance of the trust but in hostility to it, as fraudulent and void."

Finally the court quotes from the case of *Rogers v. Rogers*, 3 Paige, 379:

"But where the complainant claims in opposition to the assignment or deed of trust and seeks to set aside the same on the ground that it is fraudulent and void, he is at liberty to proceed against the fraudulent assignee or trustee who is the holder of the legal estate in the propery, without joining the *cestui que trust*," citing authorities.

It will be seen from an examination of the Vetterlien-Barnes case that the only question decided therein is that when one who is involved and insolvent conveys away a part of his property to a trustee for the benefit of a third party, for the purpose of defrauding his just creditors, the person named in the deed as the *cestui que trust* need not

be made a party to the action; and there are many good reasons why this should be so. The theory of the courts that have made this exception to the general rule is that the conveyance of the legal title under such circumstances is a fraud upon the creditors. of the grantor and is therefore void as against them; and as they are equitably entitled to the property conveyed, they only have to reach the legal title and divest the trustee of it. In fact, many of the courts hold that it is not necessary to cancel a deed executed in fraud of creditors by a suit in equity, but that the creditors may ignore the conveyance, and attach the property as the property of the grantor. But to justify the failure to make the *cestui que trust* party to a suit, the plaintiff must plead and prove such a state of facts as will clearly show that the *cestui que trust* has no equitable interest in the property as against the plaintiff; or it must appear from the language of the deed or by implication that the trustee has full power to bind the *cestui que trust* in all matters connected with the suit. In other words, his powers as trustee must be such that a judgment between him and the plaintiff would be *res judicata* between the plaintiff and the *cestui que trust*; and before the trustee could defend the equitable title of the beneficiary of the deed his power should be such as to make him the agent of such beneficiary; for under our statutes every action must be prosecuted or defended by the real party in interest. Usually a trustee is not granted such powers. He can defend only such title as he holds, which usually is a naked legal title. Therefore, when the legal title is attacked in such a way as to threaten the safety of the equitable title of the *cestui que trust*, the law makes it the duty of the trustee to notify the beneficiary of the deed, so that he may come in and prove his equities and

sustain the deed. For although the equities of the plaintiff may be superior to the legal title of the trustee, if the equitable title of the *cestui que trust* is greater than that of the plaintiff, the deed should be upheld, and its condition performed. The supreme test is: Has the *cestui que trust* an interest in the property? If so, that interest must be afforded representation; and if this is denied, the court cannot in equity divest the absent party of such estate or adjudge it not to exist; and the court cannot say that the *cestui que trust* has no equities without hearing him, except in cases where the legal title has been conveyed to his trustee in fraud of some prior existing right; and under such circumstances that his equities, no matter how strong, between him and the grantor, could not defeat the plaintiff's claim. And, as stated before, this exception is made because the *cestui que trust* can acquire no equities under a conveyance that is void by reason of having been executed in fraud of the grantor's creditors. If this is not to be the rule, then one can be deprived of property without due process of law, for surely it will not be contended that an equitable interest of a beneficiary under a trust deed is not property as contemplated by the constitution. And these views are not unsupported by able authorities.

'Perry on Trusts, vol. 2, sec. 83:

"If a *cestui que trust* is absent and all the means of compelling him to appear have been exhausted the suit may proceed in his absence; so if he is a merely passive party and the disposition of the property is within the power of those before the court. But if the primary object of the bill is to deprive the *cestui que trust* or to charge it with debts or liens the court will not make a decree in his absence, although the legal title is in the parties before the

court. In such cases decrees have been made reserving the right of the *cestui que trust* to apply to have it amended or conveyances have been ordered without prejudice to the rights of the *cestui que trust*, who could not be found."

Story's Eq. Pleading (9th Ed.) lays down the rule in the following sections of his work:

"Sec. 149. So persons having demands prior to the creation of a trust may enforce these demands against the trustees without bringing before the court the person interested under the trust, if the absolute disposition of the property is vested in the trustee. But if the trustees have no such power of disposition (as in the case of trustees to convey to certain uses,) the persons claiming the benefit of the trust must be made parties. In many other cases, persons having specific charges on trust property, are also necessary parties. Thus for example, if an indenture of assignment should be made by a debtor conveying all of his property to such of his creditors as should execute the indenture within three months and twenty only of his creditors should be brought by a judgment creditor to recover satisfaction out of the trust property upon the ground of the priority of his judgment, all the creditors who had signed the instrument, their names being known, ought to be made parties; and an allegation in the bill of their being numerous would not be sufficient."

"Sec. 207. Seventhly, in cases of trust. The general rule in cases of this sort is that in suits respecting the trust property, brought either by or against the trustees, the *cestuis que trust* (or beneficiaries), as well as the trustees are necessary parties. And where the suit is by or against the *cestuis que trust* (or beneficiaries) the trustees also are necessary parties. The trustees have the legal interest, and therefore they are necessary parties. The *cestuis que trust* (or beneficiaries) have the equitable and ultimate interest to be affected by the decree and, therefore, they are necessary parties. Indeed, in Eng-

land, the general rule is that, if property is given to trustees for certain *cestuis que trust*, (or beneficiaries) a court of equity will decree it to be paid to the latter and not to the trustees; so that the beneficiaries are emphatically the direct parties in interest. For a similar reason, all persons who have specific charges on trust property, derived under the trust, and appertaining to the due execution of it, are generally required to be made parties to suits respecting the due execution of the trust, or touching their rights therein, whenever the persons are definitely ascertained and the trust is of a limited nature."

"Sec. 208. Upon the general principle of courts of equity, there would be an impropriety in binding either the legal claimants, or the equitable claimants, unless they were fully represented, and permitted to assert their right before the court; and if not bound the decree would not be final on the matter litigated. If the *cestuis que trust* (or beneficiaries) should not be made parties to the suit, and their interests are apparent, a court of equity will sometimes, as a matter of indulgence, and to prevent further delay and expense, allow them (if they wish) to bring forward their claims by petition, in order to have their interests ascertained; and their rights protected. But at all events, they may bring a bill against their trustees and the original plaintiff, to assert and protect their rights in the other suit."

And again, in section 215:

"It has been stated that where the trustee has the absolute power of disposing of property, he is the only necessary party. But if the trustees have not such absolute power of disposition (as if they are trustees merely to convey to certain uses) then the persons entitled to the benefit of the trust must also be made parties. * * * And where the purpose of the bill is to declare trusts for the benefit of those not named as beneficiaries in the writing, the latter must be joined."

There is one further fact to be considered in this connection. The secretary of the interior deeded the land in controversy to the trustees for the purposes and uses named in the patent. They had no authority to deed to the plaintiff on demand, even though his rights were superior to those of the townsite settlers. Their powers were not general, but special, and they cannot legally do any act which is not either implied or authorized by the deed, taking into consideration the purpose of the trust; and as they have no general power to dispose of the property as they may see fit, but must dispose of it only in one designated way, and for certain particular uses, the beneficiaries should be made parties in all actions where the trust relations between the trustees and the townsite settlers may be destroyed, and the property appropriated to a use not contemplated by the deed.

In *Smith v. Gaines*, 39 N. J. Eq. 545, it is said:

"The general rule as to parties in cases of trust is that in suits respecting the trust property, brought either by or against the trustees, the *cestuis que trust* are necessary parties. Many exceptions have been made to this rule, some for convenience, some for the reason that, by the terms or the nature of the suit, the trustees themselves represent the *cestuis que trust*. On this latter ground it has been laid down that where the only object of the suit is to transfer the trust property into the hands of the trustees, the *cestuis que trust* need not be parties; but if the existence or enjoyment of it is affected by the prayer of the suit, then they should be. Even to the rule in this restricted form, there are numerous exceptions. * * * Courts of equity exercise a large discretion in the matter, guided sometimes by slight circumstances, and taking care, on the one hand, that justice shall not be defeated through the impracticability of bringing in all persons interested in the issue, and, on the other hand, that the

rights of individuals shall not be determined when they are neither heard nor represented." .

And in the English chancery courts the rule is that, if the bill has for its object the sale of real estate vested in trustees by devise, and they have not a present absolute power of disposition over it, according to the terms of the trust, they do not fully represent the *cestuis que trust* and the latter must be made parties. To the same effect is Bigelow on Estoppel, 3d ed., page 88.

From these authorities and reason we think it is clear that the occupants of the town lots who were the beneficiaries in the trustee's deed were necessary parties. and should have been brought before the court and given an opportunity to present their case. It is not claimed that any of the government officers were guilty of any fraud in the execution of the trustees' deed, and, therefore, the exception stated in the Vetterlien-Barnes case had no application. But while the townsite claimants should have been made parties, if it were made to appear to the court that, on account of a large number of persons claiming as *cestuis que trust* they could not, without great inconvenience and great cost, all be named and served with process, the court should permit a reasonable number of the beneficiaries to defend for all.

Perry on Trusts, vol. 2, sec. 885:

"Where the parties in interest are so numerous that it is not possible or convenient to join all as plaintiffs, the court will allow a few *cestuis que trust* to sue in behalf of themselves and others; so a small number may be made defendants as representatives of all the others for the purpose of determining their rights; but in such cases all the trustees must be joined. If all the *cestuis que trust* must join in the conveyance, they should all join in the

suit, otherwise the litigation might be futile; but in the absence of any, the court will proceed to bind the rights of all, if possible. In order that a few may sue, or be sued, in behalf of a large number, it must appear that all have the same beneficial interest; for if they have different or conflicting interests, they must all be brought before the court, in order that their separate interests may be adjusted. How large the number must be in order to dispense with calling them all before the court has never been determined."

While the claim of each of the townsite occupants is for a different lot or different lots, still they all have the same beneficial interest in sustaining the title of the trustees; and, therefore, a few could defend for all, without violating any of the rules enunciated herein.

3. We will now consider the relation of the trustees to the general government and the townsite settlers, and also in this connection, as to whether or not an action can be maintained by the plaintiff to divest the trustee of the legal title before they transmit it to the lot claimants.

Mr. Chief Justice Fuller, in *McDaid v. Oklahoma ex rel. Smith*, 150 U. S. 210, said

"In the light of these provisions we perceive no reason for doubting that the trustees appointed by the secretary under the act, and whose compensation and expenses were fixed by him, were agents of the government for the purpose of carrying out the trust thereby created to the extent and as specified; and this includes the ascertainment of the beneficiaries in the first instance and the transfer of the title to them. While on the final entry the title of the United States was to be conveyed to the trustees, such conveyance was explicitly declared as made for the purposes in the act provided; and among these uses and purposes was the determination of controversies between contesting claimants by the trustees, who were to administer oaths, pass on evidence, and keep a record of

their proceedings, to be deposited in the land department. They unquestionably, in that respect, acted as the representatives of the government. * * * As matter of convenience, the trustees were the instrumentality for the transmission of title in respect of lands disposed of to actual holders, while the secretary, notwithstanding the patent, was the medium as to surplus lands, which he could not be if the legal title had definitely passed to the trustees by the patent for the whole site. * * * The trust upon which the title was held was to be discharged in accordance with the regulations, and was necessarily subject to the supervisory power of the department of the interior. * * * And that the government retains its connection by having the entry made by its own agents and the trust executed in the manner it directs. By the scheme of this act the title is held in trust for the occupying claimants, it is true, but also in trust *sub modo* for the government until the rightful claimants and the undisposed of surplus lands are ascertained. The act did not contemplate that the allowance of the entry and the issue of the patent should operate to devolve the final determination of conflicting claims to lots upon these government appointees, and until the trustees conveyed the title did not pass beyond the control of the executive department in that regard."

By this opinion the highest court of the land has settled that these trustees are simply government agents; that they hold the legal title only for the uses and purposes named in the act of congress under which the agency was authorized; and that until conveyance is made by the trustees, the land included in the patent is subject to the supervision of the executive branch of the government. If this is true, then, as stated in the opinion, the absolute title has not passed from the government and one cannot maintain an action in equity to declare a resulting trust in relation to public land until the interior department

has by absolute conveyance of the legal title lost all con-
trol over it; nor can the courts compel by *man-
damus* the conveyance of the legal title by the gov-
ernment's agents or declare the government or its agents
to be trustees for another.' (*Astiazaram v. Santa Rite Land
Co.,* 140 U. S. 80; *Johnson v. Towsley,* 13 Wall. 72; *Smelting
County v. Kemp,* 104 U. S. 636; *Steele v. Smelting Company,*
106 U. S. 447; *New Orleans v. Prince,* 147 U. S. 261; *U. S.
v. Shurz,* 102 U. S. 278; *U. S. v. Black,* 128 U. S. 149.)

Congress has the absolute power to dispose of the pub-
lic lands in any manner it may deem best, and its action is
final. If it wishes the title to remain in the name of the
United States it may so provide, or, if it should elect to
place the title in the secretary of the interior, or in any
other officer, to be held by him for the uses named in the
acts of congress, it has the undoubted power, and the sec-
retary would only be the agent or representative of the
government, and could not appropriate the land to any
use other than those named by congress. Therefore the
question to be determined is: what was the intent of con-
gress when it provided for the issuance of the title to
the townsite trustees

Counsel for plaintiff contend that the absolute title
passed to the trustees when the patent was issued and
recorded, under the theory that the government parts
with the title by record. This, of course, is the general
rule; but counsel have failed to distinguish between a
conveyance from the government to one whose title would
be adverse to it, and a conveyance to its own agent for
a particular purpose or use named in the act of congress
authorizing the issuance of such deed or patent. It will
certainly not be contended that congress had not the

power to provide that the patent should issue for these lands to the townsite trustees, and that they should not be liable to suit by any one claiming an interest in the land except where an action would lie if the title had not been conveyed by patent to the trustees, but had remained in the United States. Now, if congress could do this by an express provision, and the language of the act authorizing the conveyance is such as to clearly show that such was the intent of that body, the courts are bound to declare the law to be that which congress intended it should be.

From an examination of this act we think that congress gave the title to the trustees for the uses and purposes named in the act, and for no other, and the trustees had authority to act only within the scope of the power granted. They had power to hear and determine the rights of different claimants to lots, subject to review by the commissioner of the general land office and the secretary of the interior; and, where there was no adverse claimant for a lot, or no appeal from their decision in case of contest, they could issue a deed to the proper party without further delay, for this was within their power; but they could not convey to one who was not a town lot claimant. Congress caused the patent to be issued to them for the use of the occupants of the town, and they were given this title and authorized to convey probably as a matter of convenience, and to avoid delay; but no matter what the reason for adopting this system, congress, in effect, gave the title to its agents, the trustees, and said to them: You take this title and give it to the persons who are occupying the respective lots in the town; but if there are any lots not occupied by any person, you retain the title, and

the secretary will appropriate them to certain uses, and direct you to convey or dedicate in accordance therewith. Congress having directed the title to be conveyed to the occupants of the town through its agents, no one can intercept that title until it is vested in the person or persons whom congress intended, any more than he could prevent a conveyance by the United States to such .persons direct. So far as third persons, or persons whom the trustees or their superior officers decide are not entitled to deeds, are concerned, the title is protected by the same rules as though the patent had never issued to the trustees. It is evident that congress so intended. If this is not the rule, and one claiming adversely to the trust can maintain an action like the one at bar against the trustees, what is to prevent every defeated contestant for a townsite lot, as soon as his case is finally determined by the secretary of the interior, and before deed is issued to his opponent from bringing a similar action against the trustees and the person to whom the lot has been awarded? Such defeated claimant would have the same right to maintain such action as the plaintiff in this case has to maintain the present action. Surely congress never meant to place its agents or officers, on whom was imposed the duty of carrying the title from the government to the occupants of the town, in a position where they could be subjected to such annoyance and inconvenience.

We have already held by a unanimous court in the case of *Topeka Commercial Security Co. v. McPherson et al.,* 7 Okla. 332, that these lots are not subject to taxation until deeded by the townsite trustees; and this decision was based upon the theory that the absolute title had not passed from the government, but that the lots were still

under the supervisory power of the secretary of the interior; and the court said that a sale of such lots, prior to deeding, for failure to pay taxes, was an interference with the primary disposal of the soil, and a law authorizing such taxation would be void.

Taking into consideration the objects and purposes of the conveyance by patent to the trustees, we conclude that they cannot be embarassed and indefinitely delayed in carrying out the purposes of the trust by endless litigation, and compelled to expend their own money in defending the legal title to the townsite; and this they would have to do, if they can be sued, as there is no law by which they can be reimbursed by the government.

Counsel for the plaintiff raise the point that under the Organic Act only 320 acres could be taken in one locality for townsite purposes, as no townsite entry could contain more than that amount of land. Though this were true (which we do not decide), it cannot make any difference in this case, for the plaintiff cannot, even if the townsite entry was wrongfully made, and the plaintiff's equities ever so great, frame a petition that will state a cause of action against the trustees to declare a resulting trust. He must wait, although it may work a great hardship upon him, until after the government has parted with the absolute title and exhausted its supervisory power over the land embraced in the townsite entry. In our opinion congress has, in effect, so provided, and its will is supreme. The petition did not state a cause of action.

For the reasons herein stated, the judgment of the trial court is hereby affirmed at the costs of the appellant.

Hainer, J., who was of counsel below, not sitting, and McAtee, J., not present; all of the other Justices concurring.