### WARD v. WARD et al.

No. 8299—Opinion Filed July 22, 1919.

(182 Pac. 675.)

1. **Indians—Unallotted Lands — Divesting Title—Issuance of Patents.**

The title to unallotted lands of the Choctaw and Chickasaw Nations is in the respective Indian tribes or nations, and is divested by the issuance and delivery of patents under rules and regulations prescribed by the Secretary of the Interior.

2. **Same—Sale of Unallotted Lands—Bill to Establish Resulting Trust.**

An action will not lie to establish a resulting trust in unallotted lands of the Choctaw and Chickasaw Nations, sold at public sale, prior to the full payment of the purchase price and the issuance and delivery of patent therefor.

(Syllabus by Galbraith, C.)

Error from District Court, Atoka County; J. H. Linebaugh, Judge.

Action by N. C. Ward, as administrator, against Belle Ward and others. There was judgment for the defendants, and plaintiff brings error. Affirmed.

Jones & McCasland, for plaintiff in error.

Robert M. Rainey and Baxter Taylor, for defendants in error.

Opinion by GALBRAITH, C. This is an appeal from the judgment of the trial court, sustaining a demurrer to the petition of the administrator of B. N. Ward, deceased, seeking to establish a resulting trust in certain unallotted lands of the Choctaw and Chickasaw Nations, bid in by the deceased during his lifetime, at a public sale of such lands; the certificate of purchase for a part having been issued in the name of his wife and for the rest in the name of his son, the cash payment required under the rules of sale having been advanced by the deceased, the entire purchase price not having been paid, and the patent to the land not having been issued and delivered. The petition was drawn on

the theory that all of the payments made on the purchase price of said lands had been made by the deceased, and that he was then insolvent and his estate was insolvent and that the money paid on the purchase price of the land belonged to his creditors, and that the benefits of such payments should accrue to his estate. It is alleged in the petition that Belle Ward had attempted to convey to the defendant Mary E. Cleveland a part of the land purchased in her name, and that the grantee in the deed took the same with the full knowledge that the deceased was the real owner of said land. The petition a. alleges:

"The plaintiff shows to this honorable court that, if the deed from Belle Ward to Mary E. Cleveland be canceled and held for naught, this plaintiff can and will pay the balance due on said land and cause a patent to be issued therefor, and this court can then decree the title to said land is in the estate of B. N. Ward, deceased, and that by reason thereof this plaintiff will secure to said estate sufficient property to pay the debts of said estate, but otherwise he will not be able to pay said debts."

The prayer was for the cancellation of the deed to Mary E. Cleveland, and that the title to the land purchased be adjudged to be in the said B. N. Ward, deceased, and subject to the debts of said estate, and that it be further decreed that the patent hereafter to be issued by the Choctaw and Chickasaw Nations, and approved by the Secretary of the Interior of the United States, when executed and delivered shall be delivered by these defendants to this plaintiff, and that the title herein acquired shall inure to the benefit of the estate of said B. N. Ward, deceased, etc.

The demurrer was sustained upon the ground that the petition did not state facts sufficient to constitute a cause of action, and that the court had no jurisdiction to grant the prayer of the petition.

It is agreed by counsel for the parties that the appeal presents but one question of law; that is, whether or not a resulting trust may be declared in lands, the title to which is held by the United States.

This identical question was presented to the Supreme Court of Oklahoma Territory, in the case of Bockfinger v. Foster et al., 10 Okla. 488, 62 Pac. 799, and a negative answer returned by the court in an able and exhaustive opinion. This case was affirmed upon appeal by the Supreme Court of the United States, and for the same reasons given by the territorial court for its holding. Bockfinger v. Foster et al., 190 U. S. 116, 23 Sup. Ct. 836, 47 L. Ed. 975. The reasons the court gave for its conclusion in the Bockfinger Case, in brief, were that the Congress of the United States had absolute control over the disposition of the public lands, and that, until the title to the land had passed from the government and vested in the individual owner, the courts would not interfere with the action of the government's agents in transferring the title from the government to the individual, and therefore that, prior to the time the government has parted with absolute title to the land and exhausted its supervisory power over the same, a petition cannot be framed that will state a cause of action to declare a resulting trust in public lands. It is true that in the Bockfinger Case the lands in controversy were public lands, and a patent had issued by the government to town-site trustees, conveying the land to the trustees in trust for the benefit of the respective occupants of the town lots thereon, and that prior to the time that the trustees had executed and delivered a deed to the individual occupants of the lot or lots the supervision of the government of the land continued, and it was held that an action to declare a resulting trust in the property would not lie, because Congress in the act providing for the disposition of the land had not so provided, and the control of Congress over the lands was absolute, and its purpose in the disposition of the land could not be interfered with by the courts so long as the supervision of the government over the land continued. The same application was made of the principle in Jordan v. Smith, 12 Okla. 703, 73 Pac. 308, and in Hamilton v. Foster 16 Okla. 220, 82 Pac. 821.

The rule, and its application, is supported by convincing arguments, and illustrated by a great array of decided cases, in the opinion of the Supreme Court of the territory in the Bockfinger Case, supra, and in the opinion of the Supreme Court of the United States on appeal, and for that reason it would seem to be useless labor to repeat them here.

While it is true the lands involved in this suit were lands of the Choctaw and Chickasaw Tribes, and did not become public lands even upon dissolution of the tribal governments (section 27, Act of April 26, 1906, c. 1876, 34 Stat. 148), still the same absolute control of their disposition was vested in the Congress as in the case of public lands, and the rule applied in the above cases is applicable and controlling in the instant case.

The fact, which appears from the petition, that the title had not passed from the

Indian tribes, inasmuch as patents had not been issued for the land in controversy, is sufficient reason, as in the case of public lands, why the plaintiff could not maintain an action to establish a resulting trust therein. The Interior Department, as agent of the government in disposing of this unallotted land of the Choctaw and Chickasaw Nations. did not lose control of the same until final payment was made and patent issued. In the instant case the final payment had not been made and the patent had not been issued, and the title to the land in controversy had not passed to the purchaser. Therefore the supervisory power of the government over the land had not ended, and the court had no jurisdiction to declare a resulting trust therein.

It therefore appears that the judgment appealed from was right and should be affirmed.

By the Court: It is so ordered.