JORDAN, et al., Appellants v. O'Brien, et al., Respondents.

(18 N. W.2d 30.)

(File No. 8751. Opinion filed March 14, 1945.)

Rehearing Denied April 9, 1945.

394

**W. J. Hooper,** of Gregory, for Appellants.

**Byron S. Payne,** of Pierre, and **Roscoe Knodell,** of Winner, for Respondent.

SICKEL, J. This is an action brought to quiet title to a quarter section of land in Todd County. The land was a part of the Rosebud Sioux Reservation belonging to the Rosebud Sioux Tribe, and the title was held by the United States Government. On April 25, 1917, the land was allotted to Alice Good Voice, a Rosebud Sioux Indian. The allottee died, and on January 9, 1930, the Secretary of the Interior sold the land to the defendant George E. O'Brien for $1,000 on contract, payable $250 down and the balance in equal annual payments of $250 each. On September 16, 1932, the plaintiff Charles D. Jordan brought an action against the defendant George E. O'Brien to recover judgment on a promissory note. The debtor was a resident of the State of Nebraska, and levy was made on this land under a warrant of attachment. Judgment was entered in the action, and the land was sold to plaintiff at execution sale. On September 5, 1933, George E. O'Brien assigned his interest in the land to Cora O'Brien.

On February 10, 1934, sheriff's deed was issued to plaintiff Charles D. Jordan. In the meantime, the defendant George E. O'Brien had assigned the contract to . defendant Cora O'Brien and this assignment was approved by the Secretary of the Interior. The assignee then completed the payments on the contract and the government patent was issued to her on March 28, 1935. Plaintiff then brought this action against the defendants for the purpose of quieting title to the interest of defendant George E. O'Brien in the land, based on the amount he had paid on the contract at the time of the execution sale. The defendant Cora O'Brien filed a counterclaim asking that the title be quieted in her. The action was tried and a decree entered quieting the title in defendant Cora O'Brien. Appeal was taken to this court and the judgment was reversed. Thereafter a petition for rehearing was filed, and denied. On the return of the remittitur to the circuit court attorneys for plaintiffs moved for a decision in conformity with the opinion of this court as reported in 9 N. W.2d 146. The motion was heard April 27, 1944. The case was submitted on the previous record, except that the stipulation was amended by adding that the allotment was Indian land, part of the Rosebud Sioux Reservation and that title was held by the United States and allotted to Alice Good Voice, a Rosebud Sioux Indian who died before January 9, 1930, and that the assignment of the contract to Cora O'Brien was approved by the Secretary of the Interior, and that she paid $500, the balance of the purchase price on January 14, 1935. On June 16, 1944, the court made and filed new findings of fact, conclusions of law and judgment, again quieting the title in the defendant Cora O'Brien.

Appellant contends that the questions of law and fact involved in this action and on this appeal are the same as those presented to the court at the first trial and on the first appeal; that the former opinion of this court is the law of the case, and that on the second trial the circuit court erred in refusing to follow it.

█ It is a general rule, long recognized in this state, that a question of law decided by the supreme court on a former appeal becomes the law of the case, in all its subsequent stages, and will not ordinarily be considered or

reversed on a second appeal when the facts and the question of law presented are substantially the same. St. Croix Lumber Co. v. Mitchell et al., 4 S. D. 487, 57 N. W. 236; Gamble v. Keyes, 49 S. D. 39, 206 N. W. 477.

On the former appeal it was contended by appellant that the interest of George E. O'Brien in the land, under his contract, was subject to sale on execution, notwithstanding the provisions of the Act of Congress of February 8, 1887, as amended by the Act of June 21st, 1906, 34 Stat. 327, 25 U. S. C. A. § 354. In the former opinion this court said [9 N. W. 2d. 148]:

"We are of the view that this provision found its way into the law for the protection of the Indians, who were wards of the government, and not for the protection of the man who purchased Indian land."

That decision is adhered to on this appeal.

On the second trial the defendant Cora O'Brien made a motion for a decision on the following ground:

"1. At all the times from the commencement of said action in the Gregory County Circuit Court until the issuing of the sheriff's deed therein, the said land was an Indian allotment, the title to which was held by the United States, and the United States had parted with neither the legal nor equitable title thereto, and by virtue of the sovereignty of the United States and Section 3 of Article 4 of the Constitution of the United States providing that 'Congress shall have power to dispose of and make all needful rules and regulations respecting the territory and other property of the United States', said land was subject to the sole jurisdiction of the United States, and was not subject to the jurisdiction of the said state court of Gregory County, and the suit of the plaintiff therein gave him no interest in the said land."

By this motion the defendant raised the question of jurisdiction of the circuit court of Gregory County over allotted Indian lands while they remain the property of the United States.

 The general rule was stated in Johnson v. Towsley, 80 U. S. 72, 83, 13 Wall. 72, 20 L. Ed. 485:

"* * * When the law has confided to a special tribunal the authority to hear and determine certain matters arising in the course of its duties, the decision of that tribunal, within the scope of its authority, is conclusive upon all others. That the action of the land office in issuing a patent for any of the public land, subject to sale by preemption or otherwise, is conclusive of the legal title, must be admitted under the principle above stated, and in all courts, and in all forms of judicial proceedings, where this title must control, either by reason of the limited powers of the court, or the essential character of the proceeding, no inquiry can be permitted into the circumstances under which it was obtained."

The court then stated, as an exception, the judicial authority of a court of equity to inquire whether the patent had been issued through fraud, false swearing or mistake, or in violation of law, and to give an appropriate remedy. That exception, however, is not involved in this action.

In the case of Bockfinger v. Foster, 190 U. S. 116, 23 S. Ct. 836, 840, 47 L. Ed. 975, title was held by trustees of the United States. Plaintiff brought an action in one of the state courts of Oklahoma asking a decree that the trustees held title in trust for his use and to compel a conveyance to him. The Supreme Court cited and analyzed numerous cases previously decided by it, and concluded:

"After the title to public lands has passed from the United States, that is, after the Land Department has performed the last act in the series necessary to pass the title of the government, the courts will, as between parties asserting conflicting rights in such lands, determine, by appropriate judicial proceedings, which of the parties has the better right. But those cases equally recognize the principle that the courts will not interfere with the Land Department in its control and disposal of the public lands, under the legislation of Congress, so long as the title in any essential sense remains in the United States."

In the case of McKay v. Kalyton, 204 U. S. 458, 27 S. Ct. 346, 347, 51 L. Ed. 566, the Supreme Court considered the jurisdiction of the state courts of Oregon over an action involving the right of possession of "public land held in trust

by the United States for the benefit of Indians," and makes the following statement of the rule:

"Prior to the act of Congress of 1894, controversies necessarily involving a determination of the title, and, incidentally, of the right to the possession, of Indian allotments while the same were held in trust by the United States, were not primarily cognizable by any court, either state of Federal. It results, therefore, that the act of Congress of 1894, which delegated to the courts of the United States the power to determine such questions, cannot be construed as having conferred upon the state courts the authority to pass upon Federal questions over which, prior to the act of 1894, no court had any authority."

■ The Act of 1894, referred to in the above quotation, is 28 Stat. Ch. 290, Title 28 U. S. C. A. § 41(24). That statute conferred jurisdiction on the district courts of the United States "Of all actions, suits, or proceedings involving the right of any person, in whole or in part of Indian blood or descent, to any allotment of land under any law or treaty." This statute applies to disputes over allotments of land between persons of Indian blood and it confers jurisdiction on the Federal District Courts in such cases. So far as state courts were concerned, they had no jurisdiction to do anything affecting the title to public lands before the Act of 1894, and acquired no authority by it.

The case of Daugherty v. McFarland, 40 S. D. 1, 166 N. W. 143, 144, was one in which United States land was allotted to an Indian. The Indian died and the county court of Charles Mix county assumed jurisdiction to determine the heirs and to distribute the estate. One of the heirs of the allottee conveyed the whole property. None of the other heirs joined in the conveyance. The question was whether the deed, approved by the Secretary of the Interior, conveyed "the whole title, legal and equitable," to the claimants. This opinion states:

"Such county court did not have such jurisdiction. * * * that the government by its Congress had complete authority over tribal Indians and over the property, real or personal, committed to them, unaccountable to any other body or tribunal: * * * that the federal government

could dispose of such property through the agency of the Secretary of the Interior; that by the approval of the deed in question it did convey to August Lahr the fee-simple title to the whole of the tract involved, free and clear of the rights of any heirs of Goodcloud or of Iron Soldier; and that the rights, if any, of such omitted heirs should not follow the land, but should follow the fund realized upon the sale."

In the above case the applicable statute provided that the conveyance, where approved by the Secretary of the Interior, should convey full title to the purchaser. No patent was necessary. In this case the Secretary of the Interior did not approve a deed, but he approved an assignment of the contract of purchase, and issued a patent to the assignee. The rule as to jurisdiction of state courts over Indian allotments is the same in both cases.

In the case of Julia E. Ward et al., 41 Decisions of the Department of the Interior, 634, it appeared that in 1905 William R. Ward made a homestead entry. In 1906 he was adjudged insane. Final proof was made by Julia E. Ward, his wife and guardian. In 1911 Julia E. Ward was granted a divorce from her husband and in the decree it was adjudged that she was the owner of the land. Later she transferred part of the land to others. The patent was withheld pending the payment of charges of reclamation. It was held:

"The State courts have no jurisdiction to fix the succession or under what circumstances the right shall pass from the entryman to a successor in interest. The homestead is immune to process or adjudication of any State Court. It is not until title passes from the United States that the State courts can by their judgment affect title to the land."

Another decision on this issue is Ward v. Ward, 74 Okl. 291, 182 P. 675, 676. In this case the facts were that Ward bought unallotted Indian land at public sale; the certificate of purchase for part of the land ran to Ward's wife and part to his son. Some cash payments had been made on the contract but the entire purchase price had not been paid and no patent had issued when Ward died. Belle Ward, the wife, attempted to convey to Cleveland that part of the land purchased in her name. The administrator of the estate of B.

N. Ward brought the action seeking to establish a resulting trust in the land for the benefit of the estate which was insolvent. The question was whether a resulting trust could be declared in the land, the title to which was still held by the United States. The court said: "* * * Until the title to the land had passed from the government and vested in the individual owner, the courts would not interfere with the action of the government's agents in transferring the title from the government to the individual, and therefore that, prior to the time the government has parted with absolute title to the land and exhausted its supervisory power of the same, a petition cannot be framed that will state a cause of action to declare a resulting trust in public lands."

The court further said this is for the reason that:

"* * * The control of Congress over the lands was absolute, and its purpose in the disposition of the land could not be interfered with by the courts so long as the supervision of the government over the land continued. * * * The Interior Department, as agent of the government in disposing of this unallotted land * * * did not lose control of the same until final payment was made and patent issued."

Attention is also directed to Starr v. Starr, 78 Okl. 119, 188 P. 1067. The facts in this case were that Ben Starr purchased 170 acres of unallotted Indian land. He placed 140 acres of it in the name of a son Jacob Starr and 30 acres in the name of Lillie Starr, his wife. The funds were advanced by the wife for her own use. The amount paid was about one-half the purchase price. Final payment had not been made and no patent had issued when this action was commenced. It was held on the authority of Ward v. Ward, supra, that:

"An action would not lie to establish a resulting trust in unallotted lands (Indian) sold at public sale, prior to the full payment of the purchase price and the issuance and delivery of patent therefor. Therefore the suit was prematurely brought."

The laws of the United States placed in the Secretary of the Interior the authority to decide all matters relating to the control and disposal of Indian lands. These

matters are federal·questions over which state courts have no jurisdiction so long as title to the lands remains in the United States. The only interest that defendant George E. O'Brien ever had in the land involved in this action was part payment by him on a contract of purchase executed by the Secretary of the Interior, and which was assigned to defendant Cora O'Brien, to whom the patent was issued in 1935. The circuit court of Gregory county was without jurisdiction to attach or to sell that interest in the land on execution. Defendant Cora O'Brien was therefore entitled to judgment in this action quieting title in her.

Judgment affirmed.

SMITH, P. J., and POLLEY and ROBERTS, JJ., concur.

RUDOLPH, J., dissenting. I am of the opinion that the sale of the land by the Secretary of Interior to O'Brien gave to this purchaser an interest in the land which was subject to levy and sale under execution. The Secretary of Interior was authorized to sell this land and it seems an anomaly to hold that after this authorized sale the title to this land was held in trust by the United States for the benefit of the Indian. True, final patent had not issued at the time of the execution sale, but it is not necessary that final patent always issue before rights can be acquired in lands allotted to Indians. In the case of Mullen v. United States, 224 U. S. 448, 32 S. Ct. 494, 56 L. Ed. 834, it was held that land allotted to an Indian without restrictions might be sold by the Indian before the issuance of the patent and vest a good title in the purchaser. In the case of Jones' Heirs v. Walker, 47 Ala. 175, the court held that a purchaser of land from an Indian reserve, with the approval of the President of the United States, which was the approval required by the applicable statute, acquired such an interest as was subject to sale under execution, and its purchase under such sale conferred a title to the land superior to a patent issued to a purchaser subsequent to the execution sale.

It is my opinion that when Congress authorized the Secretary of the Interior to sell this land (Ch. 431, Sec. 1, 36 Stat. 855, 25 U. S. C. A. § 372), such authorization carried with it the power to sell under contract; that under such contract

the purchaser acquires an interest in the land and to the extent of that interest, at least, the land is no longer held in trust by the United States and is subject to the process of the state courts.