**Kay C. O'CONNELL, Marilyn M. Walker and Sheri L. O'Rourke, Plaintiffs and Appellants,**

v.

**Loy L. HAMM, Janice J. O'Rourke, Roberta A. Heathershaw, and Lyle O'Rourke and Ronald Heathershaw, Co-Executors of the Estate of Donald D. Lytle, Deceased, Defendants and Respondents.**

No. 12185.

Supreme Court of South Dakota.

Argued March 9, 1978.

Decided July 13, 1978.

(d) the directness of the connection between that misconduct and the term.

Thomas G. Fritz and Horace R. Jackson of Lynn, Jackson, Shultz, Ireland & Lebrun, P. C., Rapid City, for plaintiffs and appellants.

Joseph M. Butler and Allen G. Nelson of Bangs, McCullen, Butler, Foye & Simmons, Rapid City, for defendants and respondents.

PORTER, Justice.

## CASE SUMMARY

Plaintiffs in this case brought suit against defendants, claiming an implied or constructive trust in favor of plaintiffs, the corpus of which would be certain Indian trust lands, or, in the alternative, that such trust lands be included in the estate of Donald D. Lytle. On February 28, 1977, the circuit court granted defendant's motion to dismiss the cause of action for lack of subject matter jurisdiction. It is from that order that plaintiffs have appealed. We affirm the order of the trial court.

## FACTS

Donald D. Lytle was married to Zohy Ernestine Amiotte Lytle. They had six daughters, consisting of the plaintiffs, Kay C. O'Connell, Marilyn M. Walker, and Sheri L. O'Rourke, and the defendants, Loy L. Hamm, Janice J. O'Rourke, and Roberta A. Heathershaw. Although Mr. Lytle was not an American Indian, Mrs. Lytle and the six daughters were enrolled members of the Oglala Sioux Tribe on the Pine Ridge Indian Reservation. The defendants Lyle O'Rourke and Ronald Heathershaw were the husbands of defendants Janice O'Rourke and Roberta Heathershaw, and they served as co-executors of the estate of Donald Lytle, deceased.

In December of 1963, Loy Hamm purchased certain Indian trust land with money provided by her father, Donald Lytle. Lytle would not have been able to purchase the land for himself because he was not an American Indian. In 1965 Loy again purchased Indian trust land with money provided by her father; this time, however, she contributed one-third of the purchase price. Janice O'Rourke and Roberta Heathershaw became involved in similar transactions with their father between the years 1965 and 1974 when Lytle died. In each of these transactions Lytle provided the money for the purchases.

Defendants contend that their father purchased the land as investments for them. They testified that because they did not have sufficient funds to make the pur-

chases themselves, they entered into oral agreements with their father, whereby he would provide the money and would have the use of the land for his life, but when he died the land would belong to the daughter in whose name each particular purchase was made.

Plaintiffs, on the other hand, alleged that defendants Lyle O'Rourke and Ronald Heathershaw failed to accurately inventory and appraise Lytle's estate because they omitted the property discussed above from the estate and attempted to secrete the same to their obvious benefit and to the detriment of the plaintiffs. They contend that the defendants' claim of absolute and sole ownership of the property in question is contrary to the expressed wishes of their father, who advised his daughters orally and in writing that the property in question was to be included in the estate for distribution purposes between his six daughters.

All of the real property in question is situated in Washabaugh County, which lies within the closed portion of the Pine Ridge Indian Reservation. On April 6, 1976, plaintiffs filed a complaint against defendants, asking that the circuit court declare that an implied or constructive trust in the property in question vested in plaintiffs and order defendants to convey equal shares of the property to plaintiffs or an amount equal thereto based upon present value of the land in question. In the alternative, they requested that the defendant co-executors of the estate be ordered to accurately inventory and appraise Lytle's estate, including the property in question as subject to final distribution to all heirs of Lytle, or to make a fair, equitable adjustment at the time of final distribution based upon the present market value of the land. The basis for their complaint is the fact that Lytle advanced the purchase prices for the land, and according to his will he wanted his children treated equally, share and share alike, upon his death.

On February 28, 1977, the circuit court entered an order dismissing plaintiffs' cause of action for lack of subject matter jurisdiction. Plaintiffs appeal from that order.

## ISSUE

The only issue presented by this appeal is: Do the South Dakota state courts have subject matter jurisdiction over the distribution of the Indian trust lands in question, which lie entirely within the closed portion of the Pine Ridge Indian Reservation?

## DECISION

We conclude that the South Dakota state courts do not have subject matter jurisdiction over the distribution of the Indian trust lands involved in this dispute.

As this court stated in *Kain v. Wilson*, 83 S.D. 482, 487, 161 N.W.2d 704, 706 (1968), quoting the United States Supreme Court in *Williams v. Lee*, 358 U.S. 217, 79 S.Ct. 269, 3 L.Ed.2d 251 (1959), the jurisdictional test involved here is whether or not state action "infringes 'on the right of reservation Indians to make their own laws and be ruled by them.' "

In considering this test it is helpful to summarize certain criteria to determine whether or not the application of state law would infringe upon the self-government of the Indians. These are the following: (1) whether the parties are Indians or non-Indians, (2) whether the cause of action arose within the Indian reservation, and (3) what is the nature of the interest to be protected. *Chino v. Chino*, 90 N.M. 204, 206, 561 P.2d 476, 479 (1977). In the present case the parties involved are Indians, the cause of action involves the parties' interests in Indian trust lands located within reservation boundaries. The application of state law in this instance would certainly interfere with reservation self-government.

We follow the recent example of the United States Court of Appeals for the Eighth Circuit in *Conroy v. Conroy*, 575 F.2d 175, 183–184 (8th Cir. 1978), and rule narrowly on the facts before us. In *Conroy, supra,* the court said:

We do not here paint with a broad brush. . . . We rule narrowly upon

the property division made, having in mind the various interests to be considered. It was well said by a recent commentator that

> Corollary to the issue of fostering the development of tribal . . . economic infrastructures, protection of tribal resources, and protection of civil rights, is the problem of describing with accuracy the boundaries of jurisdictional authority of the federal, state, and tribal governments in matters involving Indian affairs. This is an exceedingly complex area of law. Three rules of general import govern the resolution of any jurisdictional clash: (1) Congress has plenary authority in matters involving Indian affairs; (2) tribal jurisdiction is an inherent incident of tribal sovereignty and is limited only to the extent that Congress has taken it away. *Id.* at 183–184 (footnote omitted).

■ Accordingly, the conclusion is inescapable that our state courts have no jurisdiction to hear and determine a civil action between enrolled Indians for the creation of a constructive trust, the corpus of which would be Indian trust lands.

The laws of the United States placed in the Secretary of the Interior the authority to decide all matters relating to the control and disposal of Indian lands. These matters are federal questions over which state courts have no jurisdiction so long as title to the lands remains in the United States. *Jordan v. O'Brien*, 70 S.D. 393, 400–01, 18 N.W.2d 30, 33 (1945). In *Smith v. Temple*, 82 S.D. 650, 152 N.W.2d 547 (1967), this court held that state courts have no jurisdiction of an action by one Indian against other Indians for damages resulting from an automobile accident on a state highway within the territorial limits of an Indian reservation. We see no reason to depart from that holding at this time. Indeed, an assumption by this court of jurisdiction over Indian trust land in the manner here requested is even more of an infringement on the self-government of the Indians than that ruled upon in *Smith, supra.*

■ There has been no showing that any available tribal and federal remedies have been exhausted by the plaintiffs. Because the parties involved are enrolled Indians and the land involved is reservation trust land, we have no reason to believe that any judgment by this court would be enforceable. We have no power to affect title to the land involved. We may not adjudicate the disposition of property over which we have no control; such disposition is certainly beyond our jurisdiction.

## CONCLUSION

We, therefore, affirm the order of the circuit court dismissing the plaintiffs' complaint for lack of subject matter jurisdiction.

All the Justices concur.