Beverly A. FLAGTWET, Administratrix of the Estate of Arvid H. Flagtwet, Plaintiff and Appellant,

v.

Dawn SMITH, Defendant and Appellee.

No. 15241.

Supreme Court of South Dakota.

Considered on Briefs May 23, 1986.

Decided Sept. 24, 1986.

Gale E. Fisher, Fisher & Hughes, Sioux Falls, for plaintiff and appellant.

Chester A. Groseclose, Jr., Richardson, Groseclose, Kornmann & Wyly, Aberdeen, for defendant and appellee.

SABERS, Justice.

After remand, Beverly A. Flagtwet, as administratrix, appeals a money judgment of $2,500 for the loss of companionship and society of her husband as grossly inadequate. We reverse and remand.

## FACTS AND CASE HISTORY

### a) First Trial and Appeal

Arvid Flagtwet died of injuries sustained in an automobile accident with a vehicle driven by Dawn Smith. *See: Flagtwet v. Smith,* 367 N.W.2d 188 (S.D.1985). Pursuant to SDCL 21-5, Beverly brought a wrongful death action against Smith for the benefit of her children and herself.

In wrongful death actions, damages may be awarded which are "proportionate to the pecuniary injury resulting from such death to the persons respectively for whose benefit such action shall be brought." SDCL 21-5-7. Based upon the testimony of an economics expert, the trial court concluded that Arvid's estate had sustained pecuniary damages of $268,312. This sum included the value of home services[1] of $16,890 less personal consumption of 31%, but excluded any sum for loss of companionship and society.

Beverly also sought damages for the loss of Arvid's companionship and society. Beverly's expert did not place a monetary value on this loss[2] nor did Beverly offer an opinion of its monetary value. The trial court held that the term "pecuniary injury" in SDCL 21-5-7, encompassed strictly economic loss and refused to award damages for the loss of companionship and society.

---

1. "Home services" means the work a decedent did around the home that the survivor now has to perform or hire because of the death. Home services typically include mowing, repairs, and snow shoveling. The trial court based the home service evaluation on the fact that Arvid, whose hobby was carpentry, worked around the home four hours a week and valued same at the minimum wage.

2. Apparently experts can arrive at dollar amounts for such losses using "standard present worth techniques." *See generally: Wyatt v. United States,* 470 F.Supp. 116,120 (W.D.Mo. 1979).

When this case was appealed the first time, this court held that:

> [R]egardless of the age of the decedent in a wrongful death action, it is proper for the trier of fact to consider the loss of decedent's companionship and society resulting from such death when determining the pecuniary injury to the persons for whose benefit such action is brought under SDCL 21–5–7.

*Flagtwet* at 189.

The court further held that the trier of fact could consider the loss of companionship and society as expressed by, but not limited to, the words "advice," "assistance" and "protection," without consideration for the survivors' grief and mental anguish.

### b) Remand

On remand no new evidence was presented. The trial court had before it Beverly's trial testimony and the expert's depositions and calculations.

The facts concerning companionship and society are not disputed. At the time of his death, Arvid was fifty years old, his life expectancy was twenty-five years. Beverly was also fifty and had a life expectancy of thirty years. They had been married for twenty-nine years and had two adult children, Vicki, age twenty-five, who was living in Brookings and married with three children, and Greg, age seventeen, who lived at home at the time of his father's death, but who moved to California prior to trial.

The children did not testify about their companionship with their father. Beverly testified, however, that when the children were smaller the family spent summers at their lake cabin where they fished and boated as a family. Vicki's children, she said, had a strong, warm relationship with their grandfather. He watched out for them and "start[ed] them water skiing [sic] and fishing."

Arvid advised the family on business and financial matters. Socially, Beverly and Arvid had an active life at the lake. They went to dances and movies. They entertained in their home and visited friends in their homes. They vacationed primarily at the lake, but also took occasional trips in a motor home. They loved to travel. There was no mention of their sexual relationship.

Since Arvid's death, Beverly sold the lake cabin and no longer goes to the lake. Since his death, she has not participated in any of these activities and feels she doesn't "really belong anywhere."

The trial court adopted Beverly's proposed findings of fact but rejected her conclusion that she be awarded $50,000 for the loss of companionship ($2,000 per year for twenty-five years, Arvid's life expectancy).[3] Instead, the trial court awarded $2,500.[4] In the memorandum decision, which was incorporated into the findings under SDCL 15–6–52(a), the trial court explained:

> Defendant [Smith] has pointed out that there were damages already awarded by the Court for "home services" which were valued at $17,000 before a deduction for personal consumption as well as other items which relate to advice and assistance. After taking all these items into consideration the Court feels that the plaintiff should be entitled to an additional award of $2500 for loss of companionship and society of her husband.

### 1. WAS THE AWARD DIVISIBLE?

Smith argues that the amended judgment is generous and, as the trial court intended, indivisible, and that it was proper to use the amount awarded for home services to help support its adequacy.

---

**3.** Beverly did not propose any separate or specific monetary value for her children's loss of companionship and society and claims that the court did not make any provision for the children. However, Smith argues and we agree, that the trial court did not purport to determine how any part of the damage award would be distributed among the decedent's wrongful death beneficiaries. SDCL 21–5–8.

**4.** Beverly claims that this is only $100 per year for twenty-five years. However, $2,500 is substantially more than the present value of payments of $100 per year for twenty-five years.

■ The first question to be determined is whether the original award of $16,890 for home services less 31% for personal consumption can be included to help support the trial court's later award of $2,500 for loss of society and companionship. In the first trial, the trial court expressly denied damages for loss of companionship and society. The sole reason for reversing and remanding the case was because these elements had not been considered when Beverly's damages were initially determined. *Flagtwet, supra*. A question of law decided by the supreme court on a former appeal becomes the law of the case in all its subsequent stages. *Jordan v. O'Brien*, 70 S.D. 393, 18 N.W.2d 30 (1945). Therefore, Smith cannot now claim that the trial court already awarded some money for those elements.

Smith also argues that "[i]f there was error requiring a new trial, ... the entire award should be reexamined." Although this argument initially appears to have some merit, we must reject it because the prior award was both divisible and final, and because we previously upheld the trial court's adoption of the expert's analysis as to the amount of damages. *Flagtwet, supra*.

The next question to be determined is:

2. WHETHER THE SUM OF $2,500 IS ADEQUATE COMPENSATION TO A WIDOW AND TWO ADULT CHILDREN FOR LOSS OF COMPANIONSHIP AND SOCIETY, AS EXPRESSED BY THE TERMS ADVICE, ASSISTANCE AND PROTECTION, WITHOUT CONSIDERATION FOR THEIR GRIEF AND MENTAL ANGUISH?

■ In wrongful death actions, the plaintiff has the burden of proving the pecuniary loss resulting from the death of the decedent. *Gilbert v. Root*, 294 N.W.2d 431 (S.D.1980). "[B]ecause the amount of damages to be awarded is a factual issue to be determined by the trier of fact, we review the issue on appeal under the clearly erroneous standard." *Flagtwet* at 193, *citing Pope v. Brown*, 357 N.W.2d 510 (S.D.1984). Additionally, this court has noted the impossibility of formulating a definite rule whereby the loss of consortium in money can be determined and has allowed the trier of fact "wide latitude." *Morey v. Keller*, 77 S.D. 49, 54, 85 N.W.2d 57, 60 (1957).[5]

When this court considers whether a damage award is adequate, the measure is not the difference between the factfinder's award and what the members of this court would allow; rather, this court looks to see whether the damages "strike mankind, at first blush, as being, beyond all measure, unreasonable and outrageous, and such as manifestly show the jury [factfinder] to have been actuated by passion, partiality, prejudice or corruption." *Weidner v. Lineback*, 82 S.D. 8, 20, 140 N.W.2d 597, 603 (1966).

Beverly argues that the award of $2,500 is so shockingly low that it cannot be permitted to stand. She argues that the award bears no reasonable relationship to the loss to be compensated and cannot be supported by the facts and circumstances of this case. Both sides submit numerous cases by numerous courts where similar damages have been found to be adequate or inadequate. While these cases are helpful, they are not determinative.

■ In any case, it is difficult to measure the monetary value of the loss of companionship and society. It is also difficult to exclude consideration for grief and mental anguish suffered by the beneficiaries. Although it is difficult to measure the monetary value of a man's advice, assistance and protection in any case, it is clear in this case that the award was inadequate. Consider the value of Arvid's ad-

5. The United States Supreme Court has hinted, but not yet decided, that the competing views on the loss of society can be reconciled by allowing an award which is primarily symbolic rather than a substantial portion of a survivor's recovery. *Mobil Oil Corp. v. Higginbotham*, 436 U.S. 618, 98 S.Ct. 2010, 56 L.Ed.2d 581 (1978). *Contra*, 66 Cal.Jur.3d, *Wrongful Death* § 36 (loss of society has an actual value and cannot be compensated by merely nominal damages).

vice, assistance and protection at the lake with his wife and his children. Consider the value of his advice, assistance and protection in boating, fishing, skiing or during storms. Consider the value of their loss of all that, and their loss of the desire to do many of those things without him. Consider Beverly's feeling of not belonging anywhere because she is without his advice, assistance and protection.

Even without any consideration for the grief and mental anguish suffered by the beneficiaries, the monetary value of Arvid's advice, assistance and protection for the twenty-five years of his life expectancy clearly exceeds $2,500. Since it is our duty to review the award, not set it, we must reverse and remand to the trial court for an adequate award.

WUEST, C.J., and MORGAN, J., concur.

HENDERSON, J., concurs in result.

FOSHEIM, J., dissents.

FOSHEIM, Justice (dissenting).

Mindful that no award of damages will adequately compensate decedent's wife and adult children for their loss, I nevertheless dissent. The award *is* low. However, damages for amorphous losses requires that the factfinder "must be allowed a wide latitude." *Morey v. Keller*, 77 S.D. 49, 54, 85 N.W.2d 57, 60 (1957). That damages are awarded in an extremely liberal or extremely conservative fashion does not alone allow this Court to disturb the judgment. *Hotovec v. Howe*, 79 S.D. 337, 111 N.W.2d 748 (1961) ("extremely liberal" award affirmed). The present award does not "manifestly show" the court below was motivated by the "passion, partiality, prejudice or corruption" necessary for this Court to disturb its decision. The court's award for appellant's other losses are seemingly adequate and undisputed. Since the award for the entirety of damages appears fair, I cannot conclude the court was motivated by any of the four above mentioned improprieties in fixing the single area of damages appealed from.