PRINCESS FAIR BLOUSE, INC.,
Plaintiff,

v.

VIKING SPRINKLER COMPANY,
Defendant and Third-Party-
Plaintiff,

Monleigh Garment Company, American Motorists Insurance Company, Grain Dealers Mutual Insurance Company, Iowa Hardware Mutual Insurance Company, Quincy Mutual Fire Insurance Company, Harry S. Swimmer, d/b/a Swimmer Insurance Agency, Swimmer Insurance Agency, Inc., Defendants,

v.

SOUTHEASTERN UNDERWRITERS ASSOCIATION, Third-Party-
Defendant.

Civ. No. C–203–G–58.

United States District Court
M. D. North Carolina,
Greensboro Division.

Aug. 15, 1960.

**2**

Sapp & Sapp, Greensboro, N. C., for plaintiff.

Jordan, Wright, Henson & Nichols, Greensboro, N. C., for defendants, Harry S. Swimmer, d/b/a Swimmer Insurance Agency and Swimmer Insurance Agency, Inc.

EDWIN M. STANLEY, District Judge.

The only unresolved dispute in this litigation is the counterclaim of the defendant, Swimmer Insurance Agency, Inc., against the plaintiff for balance alleged to be due on insurance premiums.

Initially, the plaintiff sought recovery against the defendants, Viking Sprinkler Company and Monleigh Garment Company, for damages sustained as the result of alleged negligent performance of a contract to install a sprinkler system in premises plaintiff had leased from Monleigh Garment Company in Mocksville, North Carolina, and recovery against the defendants, American Motorists Company, Grain Dealers Mutual Insurance Company, Iowa Hardware Mutual Insurance Company and Quincy Mutual Fire Insurance Company, for that portion of the loss alleged to have been directly caused by sprinkler leakage, which plaintiff alleged was a risk insured by policies issued by the four insurance companies.

In the alternative, the plaintiff sought recovery against Harry S. Swimmer, d/b/a Swimmer Insurance Agency, plaintiff's insurance broker, in an amount equal to that allegedly due from the insurance companies, in the event the insurance companies should be absolved of liability, on the grounds that Harry S. Swimmer had "agreed to obtain for and to furnish to the plaintiff insurance coverage for the protection of its properties and interests and agreed to prepare the necessary contracts."

For some years prior to June 30, 1958, the defendant, Harry S. Swimmer, had owned and operated a general insurance brokerage business in Charlotte, North Carolina, under the style and trade name of Swimmer Insurance Agency. As of June 30, 1958, the business was incorporated under the name of Swimmer Insurance Agency, Inc. The corporation acquired all the assets and assumed all the liabilities of the proprietorship, and the corporation is now the owner of the entire counterclaim asserted against the plaintiff. For convenience, the defendants, Harry S. Swimmer, d/b/a Swimmer Insurance Agency, and Swimmer Insurance Agency, Inc., will hereinafter be referred to as "Swimmer."

Swimmer filed answer to the complaint and set up a counterclaim against the plaintiff in the amount of $3,710.90 for premiums due on the four fire insurance policies upon which plaintiff had based a portion of its claim for relief. The plaintiff replied to the counterclaim and alleged that the premiums were, by agreement, withheld until later adjustments could be made, and requested that adjudication of the counterclaim be withheld until there could be an accounting between the plaintiff and defendant Swimmer.

On December 16, 1959, a consent judgment was entered dismissing with prejudice all claims and crossclaims set forth in the pleadings of the respective parties, except the counterclaim of Swimmer against the plaintiff. The four insurance companies contributed a substantial sum toward the settlement. With respect to the defendant Swimmer, the consent judgment provided:

"(7) The plaintiff's complaint and alleged cause of action against defendants, Harry S. Swimmer, d/b/a Swimmer Insurance Agency and Swimmer Insurance Agency, Inc., shall be and the same are hereby dismissed with prejudice, and this action is retained upon the docket solely for the purpose of adjudicating the counterclaim of Swimmer Insurance Agency, Inc., against the plaintiff."

On December 28, 1959, by leave of court, the defendant Swimmer filed an amended counterclaim in which recovery was sought of an additional $388.64, representing net charges on general liability and workmen's compensation insurance policies as a result of an experience audit. As amended, the counterclaim of the defendant Swimmer now seeks recovery of the sum of $4,108.62 against the plaintiff by reason of premiums allegedly due on the following insurance:

(a) The sum of $3,719.98, the amount sought in the original counterclaim, representing unpaid premiums on fire and extended coverage policies written by the four defendant insurance companies, and extensions of the same coverage. These policies were the basis of plaintiff's claim against the defendant Swimmer, and the four insurance companies made a substantial contribution to the settlement made with the plaintiff.

(b) The sum of $388.64, representing additional net charges on general liability and workmen's compensation policies as the result of an experience audit. The original premiums on these policies have been paid.

At the trial, the defendant Swimmer offered evidence tending to support the correctness of each item of the counterclaim in the sum of $4,108.62, and evidence tending to establish a contract with the plaintiff to furnish insurance coverage for the protection of the plaintiff's properties and interests in connection with its Mocksville, North Carolina, operation. The plaintiff offered no testimony, and did not contest the correctness of its account with Swimmer, but relied solely upon lack of jurisdiction of the court to adjudicate the claim.

The crucial question for determination is whether the counterclaim asserted by the defendant Swimmer is compulsory, or merely permissive. If only permissive, the requisite amount to support federal jurisdiction is not present.

The pertinent provision of Rule 13, Federal Rules of Civil Procedure, 28 U. S.C.A., provides:

"(a) *Compulsory Counterclaims.* A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, *if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim* and does not require for its adjudication the presence of third parties of whom the court cannot acquire jur-

isdiction, except that such a claim need not be so stated if at the time the action was commenced the claim was the subject of another pending action. (Emphasis supplied)

"(b) *Permissive Counterclaims.* A pleading may state as a counterclaim any claim against an opposing party not arising out of the transaction or occurrence that is the subject matter of the opposing party's claim.

\*  \*  \*  \*  \*  \*

"(e) *Counterclaim Maturing or Acquired After Pleading.* A claim which either matured or was acquired by the pleader after serving his pleading may, with the permission of the court, be presented as a counterclaim by supplemental pleading." \* \* \*

■ Jurisdiction over "compulsory counterclaims" is ancillary to the original jurisdiction of federal district courts, and no independent jurisdictional basis for such counterclaims need be shown. Moore v. New York Cotton Exchange, 1925, 270 U.S. 593, 46 S.Ct. 367, 70 L.Ed. 750; United Artists Corp. v. Masterpiece Productions, 2 Cir., 1955, 221 F.2d 213. On the other hand, a "permissive counterclaim," or one unconnected with the transaction out of which the claim sued on arises, is not ancillary and requires independent grounds of jurisdiction. Lesnik v. Public Industrials Corporation, 2 Cir., 1944, 144 F.2d 968; McKnight v. Halliburton Oil Well Cementing Co., D.C.W.Va., 1957, 20 F.R.D. 563.

In Moore v. New York Cotton Exchange, supra, [270 U.S. 593, 46 S.Ct. 371] it is said:

" 'Transaction' is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship."

■■ This liberal view is now well established. It is the test that has been determined the "one compelling test of compulsoriness." Rosenthal v. Fowler, D.C.N.Y.1952, 12 F.R.D. 388, 391. It is generally accepted that the term "transaction or occurrence" is to be given a liberal construction, and is not to be used in any narrow or restricted sense, and the counter claim is compulsory if there is any logical relation between the plaintiff's claim and the counterclaim. 1A Barron and Holtzoff, Federal Practice and Procedure, Sec. 394. "\* \* \* Courts should give the phrase 'transaction or occurrence that is the subject matter' of the suit a broad realistic interpretation in the interest of avoiding a multiplicity of suits." 3 Moore's Federal Practice, Sec. 13.13 (2d Ed. 1948). Courts, having acquired jurisdiction of a cause for any purpose, should dispose of the entire controversy and not leave any part of it unsettled. Arizona Lead Mines v. Sullivan Mining Co., D.C.Idaho 1943, 3 F.R.D. 135. "The adjustment of defendant's demand by counterclaim in plaintiff's action rather than by independent suit is favored and encouraged by the law. That practice serves to avoid circuity of action, inconvenience, expense, consumption of the courts' time, and injustice." Chicago & N. W. Ry. Co. v. Lindell, 1929, 281 U.S. 14, 50 S.Ct. 200, 201, 74 L.Ed. 670.

There can be little doubt but that the premiums due on the four fire insurance policies, and extensions of the same coverage, "arise out of the transaction or occurrence that is the subject matter" of the plaintiff's claim against the defendant Swimmer. They involve the identical coverage upon which the plaintiff sought recovery against the insurance companies, and upon which alternative relief was sought against the defendant Swimmer. The fact that some of the premiums involved a continuation or extension of the same coverage is of no material significance.

The only serious question relates to the additional $388.64 included in the amended counterclaim. It is true that these premiums relate to general *liability* and workmen's compensation policies,

and are not related to the policies or coverage upon which the plaintiff based its claim. Nevertheless, the plaintiff alleged that the defendant Swimmer had "agreed to obtain for and to furnish to the plaintiff insurance coverage for the protection of its properties and interests, and agreed to prepare the necessary contracts," and the alleged breach of this agreement constituted the basis of plaintiff's claim against Swimmer. Additionally, on July 3, 1957, the plaintiff wrote the defendant Swimmer that it was assuming that Swimmer was keeping "tabs" on the burglary and workmen's compensation policies coming due in March and April, 1958.

Viewing the evidence as a whole, it can fairly be said that the plaintiff contracted with the defendant Swimmer to furnish adequate insurance coverage on its operation at Mocksville, North Carolina, and that each separate policy and each separate coverage was but one occurrence of many which combined to make up the single transaction between the parties. Since there is a logical relationship between the claim asserted by the plaintiff and the counterclaim asserted by the defendant Swimmer, it follows that the court, having acquired jurisdiction for the purpose of adjudicating plaintiff's claim, should dispose of the entire controversy and not leave any part of it unsettled. As earlier noted, such policy is favored and encouraged by the law.

It is found and concluded that the entire counterclaim of the defendant Swimmer "arises out of the transaction or occurrence that is the subject matter" of plaintiff's claim, and that the defendant Swimmer is entitled to recover of the plaintiff the sum of $4,108.62 together with accrued interest. A judgment will be entered accordingly.

This opinion constitutes findings of fact and conclusions of law pursuant to the provisions of Rule 52, Federal Rules of Civil Procedure, 28 U.S.C.A.