**UNITED STATES of America, as owner of the USNS BLUE JACKET, Plaintiff,**

**v.**

**Alfred M. SHAFTER, as next friend of the dependents and next of kin of Georg Joseph Kostka, Dr. Horst Willner, as Administrator of the Estate of Georg Kostka, deceased, the owner of the GERMAN MOTORSHIP DIRK, Albingia Versicherungs-Aktiengesellschaft, and the British Marine Mutual Insurance Association, Ltd., Defendants.**

**No. 66 Ad. 477.**

United States District Court
S. D. New York.

Oct. 3, 1969.

---

Robert M. Morgenthau, U. S. Atty., by Louis E. Greco, Atty. in Charge, Admiralty & Shipping Section, Dept. of Justice, New York City, for plaintiff; Philip A. Berns, New York City, of counsel.

Bernard Shafter, New York City, for Alfred Shafter, as next friend of the dependents and next of kin of Georg Joseph Kostka; Jacob Rassner, New York City, of counsel.

Haight, Gardner, Poor & Havens, New York City, for defendants Dr. Horst Willner, Albingia Versicherungs-Aktiengesellschaft' and British Marine Mutual Insurance Assn.; Charles S. Haight, Jr., New York City, of counsel.

Francis J. Nicosia, New York City, for George G. Kilarjian.

MANSFIELD, District Judge.

In this libel filed in May 1966 by the United States Government seeking recovery of damages suffered by its vessel as the result of a collision with a ship in which defendants had varying interests, one Francis J. Nicosia, who represents himself to be the substituted attorney for a defendant sued in a representative capacity (Alfred M. Shafter, as next friend of the dependents and next of kin of Georg Kostka) has moved pursuant to Rule 15(a) for amendment of defendant's answer to substitute another person as the representative and, pursuant to Rules 13(a) and (f), F.R.Civ. P., for leave to file a counterclaim on behalf of such defendant. For the reasons stated below the motion is denied. The background facts are as follows:

On February 10, 1964, a vessel owned by the United States, the USNS Blue

Jacket, collided with a German fishing boat, the M/V Dirk, which sank on the Weser river in the territorial waters of the Federal Republic of Germany. Six members of the Dirk's seven-man crew, including her captain and owner, Georg Kostka, were killed; the seventh survived, but suffered physical injuries.

On the 8th of May, 1964, in accordance with applicable provisions of the North Atlantic Treaty Status of Forces Agreement,[1] various representatives of the captain and crew of the Dirk, together with the compensation underwriters who had made payments to them, filed claims with the German Defense Costs Office for the deaths, personal injuries, and property damage suffered by the Dirk and its crew. On November 2, 1965, all such claims were denied. The Defense Costs Office in Bremen ruled that the property damage claims fell outside its jurisdiction, since Article VIII(5) (h) of the Status of Forces Agreement limited compensation under the treaty to claims for death or personal injury.[2] The death and personal injury claims were denied on the merits, the Defense Costs Office being of the opinion that on all the available evidence the collision had been solely caused by improper navigation of the Dirk.

The compensation underwriters promptly appealed pursuant to Article 12(1) of the Implementation Law providing for appeal to the German courts from determinations by the Defense Costs Office. No appeal was taken by the individual representatives, who then resorted to remedies against the United States under the Public Vessels Act (46 U.S.C. § 781 et seq.) in the United States courts.

Three separate suits followed. The first libel ("Shafter libel") was filed in this Court on November 10, 1965 (65 Ad. 1136), by Alfred M. Shafter, as next friend of the dependents and next of kin of Georg Kostka (the owner and master of the Dirk) and the members of his crew. In addition to stating causes of action for wrongful death and personal injuries, Shafter sued to recover for property damage arising out of the loss of the Dirk.

The second libel ("Kostka Estate's libel") was filed, also in this Court, on February 9, 1966 (66 Ad. 132), by Kostka's estate and two hull underwriters of the Dirk, Albingia Versicherungs-Aktiengesellschaft and the British Marine Mutual Insurance Association, Ltd., seeking recovery for property damage and loss arising out of the sinking of the Dirk. Discussions between counsel for Shafter and the Administrator of Kostka's estate as to their competing claims for the same property damages and loss led to the filing of a notice in 65 Ad. 1136, the original Shafter libel, "having the force and effect of an amended libel," whereby libelants in that action agreed to move at trial to strike "all claims predicated on property loss or damage."

The third libel (66 Ad. 477) ("Government libel"), out of which the instant motion arises, was filed by the United States on May 12, 1966, simultaneously with the filing of its answer in the Shafter libel. The Government sought recovery for damage suffered by the USNS

---

1. Agreement of June 19, 1951, 4 U.S.T. 1792, to which the Federal Republic of Germany acceded by a Supplementary Agreement of August 3, 1959, effective July 1, 1963, 14 U.S.T. 531.

2. Paragraph 5(h) of Article VIII of the Agreement states that
"[With immaterial exceptions] the provisions of this paragraph shall not apply to any claim arising out of or in connection with the navigation or operation of a ship or the loading, carriage, or discharge of a cargo, other than claims for death or personal injury to which paragraph 4 of this Article does not apply."
Paragraph 4 is a waiver of claims by the contracting governments against each other for injuries or deaths suffered by members of their armed forces in the course of official duties.

Blue Jacket in its collision with the Dirk, and named as defendants Shafter, as next friend of the dependents and next of kin of Georg Kostka; Dr. Horst Willner, as administrator of the Kostka estate; and the aforementioned two hull underwriters of the Dirk. The Kostka estate was joined as a respondent because of Kostka's ownership of the Dirk, and the Kostka heirs because of their liability under § 1967 of the German Civil Code for the liabilities of the estate.

On July 26, 1967, Judge Frankel granted the Government's motion for summary judgment dismissing the Shafter libel for want of jurisdiction of the subject matter. 273 F.Supp. 152 (S.D. N.Y.1967).[3] The treaty arrangements constituting the North Atlantic Treaty Status of Forces Agreement, he held, "create a comprehensive and exclusive scheme for adjudication and settlement of claims within their purview," *id.* p. 153. Finding that the Blue Jacket had been part of a "force" governed by the provisions of the Agreement, he concluded that the Shafter claims for wrongful death and personal injuries, which were covered by ¶ 5(h) of Article VIII of the Agreement, must be considered withdrawn from the court's subject-matter jurisdiction. The Court of Appeals affirmed, per curiam, 400 F.2d 584 (2d Cir. 1968), and certiorari was denied.

Because Shafter's own action against the Government was pending at the time when he was named a defendant in the Government's libel for damages to the Blue Jacket (66 Ad. 477), he did not bother to reassert his claims for wrongful death and personal injuries as counterclaims in the latter suit. Now that his libel against the Government has been dismissed by Judge Frankel, however, he has apparently changed his mind. Francis Nicosia, purporting to act as substituted proctor for the Kostka heirs, moves pursuant to Rules 13(a), 13(f) and 15(a), F.R.C.P. for permission to substitute George G. Kilarjian for respondent Alfred M. Shafter, and to file a counterclaim against the Government seeking damages in the amount of $10,000 for Kostka's wrongful death and $500,000 for loss of business as a result of the sinking of the Dirk.

The United States objects to the wrongful death counterclaim on jurisdictional grounds, arguing, *inter alia*, that Judge Frankel's opinion constitutes *res judicata* as to the court's jurisdiction over the subject matter of the claim. The Administrator of Kostka's estate and the two insurers object to the lost profits counterclaim on the grounds that it poaches upon their property damage territory in contravention of their earlier agreement with Shafter's attorney, Jacob Rassner. The Government also resists substitution of Nicosia for Rassner and of Kilarjian for Shafter, arguing that no substitution of attorneys has been filed with the Court and the papers fail to reveal any authorization from the defendants and next of kin for substitution of Kilarjian.

*The Proposed Counterclaim for Wrongful Death and Personal Injuries*

Movant rests his application upon the proposition that where a court has jurisdiction over the main claim, as this Court indisputably has over the Government's claim for property damage to the USNS Blue Jacket, it also has ancillary jurisdiction over compulsory counterclaims even though independent jurisdictional grounds may be absent and the Government has not expressly waived immunity.

 Up to a certain point movant's hypothesis is sound enough. Although a permissive counterclaim under Rule 13(b), F.R.C.P., needs independent jurisdictional grounds to support it, a compulsory counterclaim—one arising "out of the transaction or occurrence that

---

3. This apparently was a mispleaded Rule 12(b) (1), F.R.C.P., motion to dismiss.

See 6 J. Moore, Federal Practice ¶¶56.17 [36], 56.03 at 2052 (2d ed. 1966).

is the subject matter of the opposing party's claim," Rule 13(a), F.R.C.P.—does not. It is regarded as ancillary or auxiliary to the main claim, and jurisdiction over that claim affords sufficient basis to adjudicate the counterclaim. 3 J. Moore, Federal Practice ¶ 13.15 (2d ed. 1968); Moore v. New York Cotton Exchange, 270 U.S. 593, 608–609, 46 S.Ct. 367, 70 L.Ed. 750, 45 A.L.R. 1370 (1926). Here movant's proposed wrongful death and personal injury counterclaim, arising out of the same collision in which the Blue Jacket was damaged, would normally satisfy the requirements of a compulsory counterclaim. Rule 13(a) further provides that a claim meeting these requirements need not be stated if, at the time the main action was commenced, the claim was the subject of another pending action. Movant's failure to plead his counterclaim for wrongful death and personal injuries at the time the Government's libel was filed in 1966, therefore, does not prejudice his present attempt to do so.

■■ Since the doctrine of auxiliary jurisdiction thus teaches that no independent jurisdictional ground is required for assertion of a compulsory counterclaim, a finding of lack of jurisdiction over such claims in a prior judicial proceeding would not ordinarily bar assertion of those claims as compulsory counterclaims in a later suit, any more than an earlier dismissal for want of jurisdictional amount would bar assertion of a $5,000 counterclaim for property damage in a subsequent action. Furthermore, when the United States sues in admiralty, an affirmative judgment may be rendered against it on a claim by respondent growing out of the subject matter of the Government's suit, regardless whether or not there has been a statutory waiver of sovereign immunity.[4] 3 J. Moore, Federal Practice ¶ 13.27, at 72–73 (2d ed. 1968); United States v. National City Bank of New York, 83 F.2d 236, 238 (2d Cir.), cert. denied, 299 U.S. 563, 57 S.Ct. 25, 81 L.Ed. 414 (1936); United States v. The Thekla, 266 U.S. 328, 45 S.Ct. 112, 69 L.Ed. 313 (1924).

■ Although the proposed counterclaim might ordinarily be asserted in such a suit, the right to do so here has been precluded by Congressional assent to and implementation of the North Atlantic Treaty Status of Forces Agreement, since, as Judge Frankel found, the treaty created a comprehensive and exclusive scheme for adjudication and settlement outside of the federal courts of the claim which movants now propose to assert in the form of a counterclaim. The detailed treaty arrangements, as well as the implementing legislation passed in connection with the treaty, must be read "to exclude the concurrent and inconsistent jurisdiction" invoked by Shafter under the Public Vessels Act. 273 F.Supp. at 156. In giving its assent to the Status of Forces Agreement, the Senate took into consideration "that disposition of third-party claims by the Government of the place where the asserted wrong occurred (normally the country of the claimant's citizenship or residence, as in the case of the claimants here) would promote fairness, ease friction, and, incidentally, be likely to result in awards against the United States more modest than those commonly recovered in American courts." 273 F.Supp. at 156. All these functions of the treaty would be diluted if claimants were allowed to bypass the claims procedures specified in the Status of Forces Agreement by asserting such claims for

4. In this case there has in fact been a statutory waiver of sovereign immunity: the Public Vessels Act provides that

"In the event of the United States filing a libel * * * in admiralty for damages caused by a privately owned vessel, the owner of such vessel, or his successors in interest, may * * * counterclaim against the United States in such suit for and on account of any damages arising out of the same subject matter or cause of action." (46 U.S.C. § 783.)

adjudication in the district courts. Although permission to assert such claims by way of counterclaim would not open up the possibility of forum-shopping inherent in the right to initiate independent suits directly, the strong Congressional policies embodied in the Stattus of Forces treaty would be undercut in both cases.

None of the policies underlying the compulsory counterclaim rule are sufficiently compelling to override the Congressional determination to place exclusive jurisdiction of such claims elsewhere than in the federal courts. The genesis of the admiralty rule as to counterclaims was the manifest injustice of allowing a sovereign to press claims against a defendant who might well be entirely barred by the doctrine of sovereign immunity from bringing his own action in return. Here, however, we have an elaborate procedure specifically designed to expedite claims against the United States for damage caused by its vessels. Movant cannot argue that he has been denied a full and fair opportunity to assert his claim against the United States. It may be true that at this point in the case, nearly three years after movant's decision to forego appeal through the German courts, no alternatives to this counterclaim remain open to him. But jurisdiction cannot be created in this Court by such a legal tactical decision.

The motion for leave to file a counterclaim for wrongful death and personal injuries must therefore be denied.

### The Counterclaim for Lost Business

■ Movant also seeks to assert a counterclaim in the amount of $500,000 for lost profits on behalf of the heirs and next of kin of Georg Kostka as owner and master of the Dirk. No jurisdictional objection is or can be raised as to this portion of the motion: the Public Vessels Act, 46 U.S.C. § 783, specifically authorizes counterclaims for "damages arising out of the same subject matter or cause of action" as the Government's claim, and the Status of Forces Agreement, while it provides for adjudication of claims for death or personal injuries, does not apply to claims for property damage.

Upon the Government's commencement of the present suit, however, movant's claim for property damage was not the subject of another pending action. On March 16, 1966, Jacob Rassner, counsel for defendants and next of kin of the captain and crew of the Dirk, filed a notice in the original Shafter suit withdrawing "all claims predicated on property loss or damage, including any claim for loss of the vessel or cargo or personal effects." The notice further specified that "all claims for such relief are specifically reserved for and on behalf of the respective libelants, which claims are to be asserted and prosecuted on their behalf by the firm of Haight, Gardner, Poor & Havens, Esqs."

Since movant's proposed counterclaim did not come within the exception provided in Rule 13(a) for claims which were the subject of another pending action, he was not barred from asserting it in Shafter's answer filed on June 10, 1966. He may now assert, therefore, only pursuant to Rule 13(f), which provides that when a pleader fails to set up a counterclaim through oversight, inadvertence, or excusable neglect, or when justice requires, he may by leave of court set up the counterclaim by amendment. No basis has been shown here for exercise of our power pursuant to Rule 13(f), which is discretionary. Ferber Co. v. Ondrick, 310 F.2d 462 (1st Cir. 1962); New Britain Machine Co. v. Yeo, 358 F.2d 397 (6th Cir. 1966). The record before us discloses no oversight, excusable neglect or any other reason justifying late filing. On the contrary, it reveals that defendant's counsel deliberately relinquished the claim to the Kostka estate's counsel, who then asserted it in the estate's separate libel. Movant's argument that Shafter

only relinquished to the Kostka estate the claim for replacement cost, not the claim for lost profits, is sharply disputed by counsel for the estate who contends that the Administrator of the Kostka estate is the only party entitled to assert a claim for property damage of any kind and that there is no material distinction between the cost of replacement of the Dirk and loss of business because of its sinking. We find it unnecessary to resolve this finespun question for the reason that after considering all aspects, including the confusion that would result from further fragmentation of the claims, the motion must, in the exercise of our discretion, be denied.

### *Proposed Substitution of Attorneys and Representative of Dependents of Kostka*

■ In his original suit Shafter acted as next friend for the dependents and next of kin of both Kostka and the other six crew members. Bernard Shafter served as proctor for Alfred Shafter, and Jacob Rassner was counsel for Bernard Shafter.

Movant now proposes that the Kostka dependents and next of kin split off from the dependents and next of kin of the other crew members, and proceed with Francis Nicosia as their new counsel and one George Kilarjian as the replacement for Alfred Shafter as next friend of the Kostka dependents. Apparently the two Shafters and Jacob Rassner would continue to represent the dependents and next of kin of the other crew members.

We cannot grant a motion for such realignment of the parties' representatives without more complete documentation. Proper evidence of the consent of both principals to the Alfred Shafter-George Kilarjian substitution, and consent of all three principals to the substitution of Francis Nicosia for Bernard Shafter and Jacob Rassner, and of the real parties in interest represented by these respective attorneys, would first

be required. We have before us only Kilarjian's affidavit asserting that he has "substituted Alfred M. Shafter as next friend of the dependents and next of kin of George Joseph Kostka," and that "My representation of the widow is fitting and proper in substitution for Alfred M. Shafter, and at the appropriate time proof of this representation will be submitted." No such proof has yet been offered. Nicosia's affidavit asserts that he has "substituted for Bernard Shafter, as proctor, and Jacob Rassner, as counsel herein." But we have nothing signed by Alfred Shafter, Bernard Shafter or any of the real parties in interest indicating their consent to such changes.

For the foregoing reasons the motions for substitution of representatives and counsel are denied without prejudice to renewal upon proper papers.

It is so ordered.