Delbert ANNIS, Plaintiff,

v.

**DEWEY COUNTY BANK, Defendant.**

Civ. No. 71–34C.

United States District Court,
D. South Dakota,
Central Division.

Dec. 15, 1971.

Charles M. Thompson, of Martens, Goldsmith, May, Porter & Adam, Pierre, S. D., for plaintiff.

Andrew Aberle, Timber Lake, S. D., and Joseph H. Barnett, of Siegel, Barnett, Schutz & O'Keefe, Aberdeen, S. D., for defendant.

## MEMORANDUM DECISION.

NICHOL, Chief Judge.

On August 3, 1971, judgment was entered in favor of defendant, Dewey County Bank, against plaintiff, Delbert Annis, in the eighth judicial circuit of the state of South Dakota. The judgment was on two notes given by plaintiff to the defendant on February 10, 1970, totaling $65,750.00 [1] plus $7,714.66 interest. These notes were executed and were to be paid in Timber Lake, South Dakota, which is not on Indian reservation land. On the same date plaintiff signed a security agreement naming 277 head of mixed cattle, 75 horses and other property as collateral. This security agreement was subsequently accepted and approved by the Bureau of Indian Affairs and by the Cheyenne River Sioux Tribal Council.

All of the secured property is located on the Cheyenne River Sioux Indian Reservation whereon plaintiff, an enrolled member of the Cheyenne River Sioux Tribe, resides. Plaintiff's ranch and his livestock are all located within the closed portion [2] of that reservation.

In May of 1971, the Dewey County sheriff attempted to attach the plaintiff's livestock. He and defendant's agents rounded up plaintiff's cattle in approximately five hours driving them about two miles until they were stopped by the plaintiff.

On May 24, 1971, this Court granted plaintiff a temporary restraining order prohibiting the defendant or its agents from foreclosing on plaintiff's livestock. This order has been continued up to the date of this memorandum decision.

The plaintiff is seeking a permanent injunction enjoining the defendant and South Dakota state officials from coming onto the closed portions of the reservation to enforce the South Dakota state court judgment by attaching plaintiff's cattle. Plaintiff also seeks damages for the loss of weight to his cattle, loss of reputation and credit in the community and mental suffering and anguish arising from the attempted attachment and its surrounding circumstances. Defendant has counterclaimed for the money owing on the judgment obtained in state court or the value of the notes with interest. In addition defendant seeks damages for mental suffering and anguish and punitive damages.

This court obtains jurisdiction under 28 U.S.C.A. § 1343 and 42 U.S.C.A. § 1983.

The main thrust of plaintiff's argument is that while the state courts may have the authority to adjudicate the rights of the parties, the state authorities have no power to enforce state judgments on the closed portions of the Indian reservations. South Dakota's Enabling Act, S.D.Comp.Laws Ann. vol. 1 at 183 (1967) disclaims jurisdiction over Indian land. In the words of S.D.Const. art. XXII: "Indian lands shall remain under the absolute jurisdiction and control of the Congress of the United States. . . ." Thus South Dakota has had no jurisdiction over Indian land.

1. Plaintiff's Ex. C shows a discrepancy between the written dollar amount (Twenty Six Thousand Seven Hundred Ten & No/100 dollars) and the figure amount ($26,750.00). The trial court found the amount of $26,750.00 to control without noting the discrepancy.

2. The closed portion of the reservation is that portion which is closed to white settlement.

The United States Congress provided a method for states to obtain jurisdiction over Indian land in an Act of Aug. 15, 1953, Sec. 7, 67 Stat. 588, 590. Pursuant to this authority South Dakota passed in 1953 S.D.Comp.Laws Ann. Secs. 1–1–12 to 16 (1967) giving South Dakota criminal and civil jurisdiction over Indian lands provided the additional costs could be passed on to the federal government. In re High Pine, 78 S.D. 121, 99 N.W.2d 38 (1959), held that statute inoperative since the conditional terms were not accepted by the federal government. That statute was also repealed by S.D.Comp.Laws Ann. Sec. 1–1–20 (1967). Again in 1961 the South Dakota legislature attempted to obtain jurisdiction by passing S.D.Comp.Laws Ann. Secs. 1–1–18 to 21 (1967). Similarly this statute never became effective since the governor's consent and federal assumption of costs required by S.D. Comp.Laws Ann. Sec. 1–1–21 (1967) were never obtained. In re Hankins, 80 S.D. 435, 125 N.W.2d 839 (1964).

The last attempt at obtaining jurisdiction was in 1963 when the legislature passed ch. 467 (1963) S.D.Laws 522. This attempt was rejected in the 1964 referendum election. S.D.Comp.Laws Ann., Table of Omitted Provisions, vol. 1 at 969 (1967).

In 1968 Congress changed the requirements for a state acquiring jurisdiction by adding that approval of the affected Indian tribes be obtained. 25 U.S.C.A. §§ 1322(a and b), 1326. Both parties stipulated that no election had been held by the adult enrolled Indians of the Cheyenne River Sioux Tribe granting the state jurisdiction.

■ Any alleged approval of the security agreement in question by the tribal council cannot operate as a grant of jurisdiction. Kennerly v. District Court of the Ninth Judicial District of Montana, 400 U.S. 423, 91 S.Ct. 480, 27 L.Ed.2d 507 (1971). It is clear that neither South Dakota nor the Cheyenne River Sioux Tribe has complied with the strict congressional procedures. As stated in Crow Tribe of Indians v. Deernose, Mont., 487 P.2d 1133, 1134 (1971), "Absent specific Congressional authorization coupled with strict compliance with its terms, state courts acquire no jurisdiction, they assert." The United States Supreme Court in Kennerly v. District Court of the Ninth Judicial District of Montana, 400 U.S. 423, 429, 91 S.Ct. 480, 483, 27 L.Ed.2d 507 (1971), has unequivocally stated:

> the tribal consent that is prerequisite to the assumption of state jurisdiction under the provisions of title IV of the Act (25 U.S.C.A. Sec. 1326) must be approved or manifested by majority vote of the enrolled Indians within the affected area of Indian Country. *Legislative action by the tribal council does not comport with the explicit requirements of the Act.* (emphasis added)

The South Dakota Supreme Court has twice held that South Dakota courts have no jurisdiction over a cause of action arising within Indian Country involving an enrolled Indian. Kain v. Wilson, 83 S.D. 482, 161 N.W.2d 704 (1968); Smith v. Temple, 82 S.D. 650, 152 N.W.2d 547 (1967). This rule of law has been firmly established since the United States Supreme Court in Williams v. Lee, 358 U.S. 217, 79 S.Ct. 269, 3 L.Ed.2d 251 (1959), held that state courts had no jurisdiction over suits against enrolled Indian defendants involving commercial transactions. See also Kennerly v. District Court of the Ninth Judicial District of Montana, 400 U.S. 423, 91 S.Ct. 480, 27 L.Ed.2d 507 (1971).

■ The defendant claims state court jurisdiction on two grounds. First, defendant seeks to distinguish the above cited cases pointing to the fact that all of the following occurred off the reservation: (1) plaintiff's signing of the security agreement; (2) plaintiff's breach; and (3) service of state court process. This argument fails to recognize that the actual attachment by state officials must be made on the reserva-

tion and state officials have no jurisdiction on Indian reservations either to serve process on an enrolled Indian or to enforce a state judgment. Commissioner of Taxation v. Brun, 286 Minn. 43, 174 N.W.2d 120, 126 (1970); Jordan v. O'Brien, 70 S.D. 393, 401, 18 N.W.2d 30, 33 (1945).

Secondly, defendant argues that the 1957 Congressional repeal of 18 U.S.C.A. Sec. 1157 [3] impliedly authorized members of the Indian tribes to mortgage livestock similar to the 25 U.S.C.A. Sec. 483a authorization to mortgage trust property with the approval of the Secretary of the Interior. Defendant then points to the Bureau of Indian Affairs and tribal approval of the security agreement here in question. Defendant makes reference to 47 Indian Affairs Manual, paragraphs 5.1, 5.3, 5.4(A), 5.-4(C), 5.7 and 5.10, pointing out that defendant has complied with the Department of Interior's instructions on securing a security interest in cattle on the Indian reservation in compliance with South Dakota law. All this shows is that enrolled reservation Indians can give valid security interests in their cattle located within the closed portions of the reservation. However, nothing in this argument extends state jurisdiction onto the Indian reservations. Kennerly v. District Court of the Ninth Judicial District of Montana, 400 U.S. 423, 91 S. Ct. 480, 27 L.Ed.2d 507 (1971); Crow Tribe of Indians v. Deernose, Mont., 487

P.2d 1133 (1971). As noted earlier, only strict compliance with 25 U.S.C.A. Secs. 1322(a and b), 1326, can grant jurisdiction to the states over Indian lands. Therefore the state officials have no power or jurisdiction to enforce the state court judgment on the reservation. A permanent injunction is granted prohibiting any officers of the state of South Dakota from enforcing the state court judgment entered against the plaintiff, Delbert Annis, on the Cheyenne River Sioux Indian Reservation.

The question now arises as to whether or not this court, since it has jurisdiction, may allow the defendant to recover on its counterclaim. It is a well established rule of law that jurisdiction over compulsory counterclaims is ancillary to the original jurisdiction of federal courts and, therefore, no independent grounds for federal jurisdiction are necessary for a compulsory counterclaim. United States for the Use & Benefit of D'Agostino Excavators v. Heyward-Robinson Co., 430 F.2d 1077, 1081 (2d Cir. 1970), cert. denied, 400 U.S. 1021, 91 S. Ct. 582, 27 L.Ed.2d 636 (1971); United Artists Corp. v. Masterpiece Productions, Inc., 221 F.2d 213, 216 (2d Cir. 1955); Holsten Import Corp. v. Rheingold Corp., 285 F.Supp. 607, 608 (S.D. N.Y.1968); Princess Fair Blouse, Inc. v. Viking Sprinkler Co., 186 F.Supp. 1, 4 (M.D.N.C.1960); United States v. Shafter, 49 F.R.D. 164 (S.D.N.Y.1969), aff'd 424 F.2d 281 (2d Cir. 1970); Berger v.

---

3. This Act of June 25, 1948, ch. 645, Sec. 1157, 62 Stat. 759, prohibited the mortgaging of Indian livestock. The Act read: Where restricted Indians are in possession or control of livestock purchased for or issued to them by the Government, or the increase therefrom, such stock shall not be sold, transferred, mortgaged, or otherwise disposed of, except with the consent in writing of the superintendent or other officer in charge of the tribe to which the owner or possessor of the livestock belongs, and all transactions in violation of this provision shall be void.

All such livestock so purchased or issued and the increase therefrom belonging to restricted Indians and grazed in the Indian country shall be branded with the I D or reservation brand of the jurisdiction to which the owners of such stock belong, and shall not be removed from the Indian country except with the consent in writing of the superintendent or other officer in charge of the tribe to which the owner or possessor of such livestock belongs, or by order of the Secretary of War, in connection with the movement of troops. Whoever violates this section by selling or otherwise disposing of such stock, purchasing, or otherwise acquiring an interest therein, or by removing such stock from the Indian country, shall be fined not more than $500 or imprisoned not more than six months, or both.

Reynolds Metals Co., 39 F.R.D. 313, 315–16 (E.D.Pa.1966).

Rule 13(a) of the Federal Rules of Civil Procedure makes a counterclaim compulsory, among other requirements, if it "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim. . . ." Rule 18(a) of the Federal Rules of Civil Procedure states in part: "A party asserting a claim to relief as [a] . . . counterclaim . . . may join . . . as many claims . . . as he has against an opposing party." Rule 82 of the Federal Rules of Civil Procedure reminds us that the Federal Rules of Civil Procedure are not to be construed as extending or limiting federal jurisdiction. With this in mind, this Court has thoroughly studied the same transaction or occurrence test and finds that here both the complaint and the counterclaim arose out of the same transaction.

The beginning point is to compare the facts and circumstances out of which the plaintiff's claim arose with the facts and circumstances out of which the counterclaim arose. It has been said that "(a) familiar test may be applied by inquiring whether the same evidence will support or refute the opposing claims." Williams v. Robinson, 1 F.R.D. 211, 213 (D.C.D.C.1940). See also United Fruit Co. v. Standard Fruit & Steamship Co., 282 F.Supp. 338, 339 (D.C.Mass.1968). This test is, however, somewhat restrictive and not in line with the trend established by Moore v. New York Cotton Exchange, 270 U.S. 593, 46 S.Ct. 367, 70 L.Ed. 750 (1926). See Albright v. Gates, 362 F.2d 928 (9th Cir. 1966). In *Moore* the plaintiffs alleged that they had wrongfully been excluded from receiving continuous cotton quotations by the defendant. Plaintiff sought a mandatory injunction requiring defendant to furnish such. Defendant filed a counterclaim alleging plaintiff was illegally obtaining and using the quotations. The Court held that both causes of action arose out of the same transaction. The Court said:

'Transaction' is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship. The refusal to furnish the quotations is one of the links in the chain which constitutes the transaction upon which appellant (plaintiff) here bases its cause of action. It is an important part of the transaction constituting the subject-matter of the counterclaim. It is the one circumstance without which neither party would have found it necessary to seek relief. Essential facts alleged by appellant (plaintiff) enter into and constitute in part the cause of action set forth in the counterclaim. That they are not precisely identical, or that the counterclaim embraces additional allegations, as, for example, that appellant (plaintiff) is unlawfully getting the quotations, does not matter. To hold otherwise would be to rob this branch of the rule of all serviceable meaning, since the facts relied upon by the plaintiff rarely, if ever, are, in all particulars, the same as those constituting the defendant's counterclaim. *Id.* at 610, 46 S.Ct. at 371.

Here the plaintiff's refusal to pay the price due or to deliver up the security pledged upon which the state court judgment was based is one of the links in the chain or essential facts which constitute the transaction upon which plaintiff bases his cause of action. Therefore, under the *Moore* doctrine both causes of action in this case arose out of the same transaction.

In United Artists Corp. v. Masterpiece Productions, Inc., 221 F.2d 213, 216 (2d Cir. 1955), it was held that since defendant's counterclaim arose from the same action that defendant set out as an affirmative defense to plaintiff's claim, both causes of action arose out of the same transaction. Here defendant's affirmative defense is the state court judgment, based on plaintiff's breach, which was being executed. It is this action which plaintiff seeks to enjoin and

it, therefore, is all part of the same transaction. In *United* we find the Court saying:

> these pleadings disclose a sufficient logical relationship so that, in the interest of avoiding circuity and multiplicity of action, the counterclaim should be considered compulsory. . . . *Id.* at 216.

Using similar reasoning, the Court in Princess Fair Blouse, Inc. v. Viking Sprinkler Co., 186 F.Supp. 1 (M.D.N.C. 1960), held that where plaintiff sued his insurance company for damages on a fire insurance policy, the insurance company's counterclaim for premiums due on the fire policy and a theft and workman's compensation policies from the same company, all arose out of the same transaction. Again with similar reasoning, a counterclaim was held compulsory in United States v. Heyward-Robinson Co., 430 F.2d 1077 (2d Cir. 1970), cert. denied, 400 U.S. 1021, 91 S.Ct. 582, 27 L.Ed.2d 636 (1971). Plaintiff sued defendant for payments due on what is called the "navy" contract. Defendant counterclaimed for overpayments on the "navy" contract and a separate contract known as the "stelma" contract. Plaintiff then counterclaimed on the "stelma" contract. The federal court had jurisdiction over the "navy" contract under the Miller Act but acquired jurisdiction over the "stelma" contract only because it arose out of the same transaction. Both contracts were to be performed at about the same time and called for only single payment progress payments with no allocation among projects. This court obtains jurisdiction over defendant's counterclaim in a similar manner.

■ It is clear that the trend of decisions is to give a liberal and broad construction to claims and counterclaims in determining whether they arise out of the same transaction or occurrence under Rule 13(a) of the Federal Rules of Civil Procedure. United States v. Hey-

ward-Robinson Co., 430 F.2d 1077 (2d Cir. 1970), cert. denied, 400 U.S. 1021, 91 S.Ct. 582, 27 L.Ed.2d 636 (1971); Semmes Motors, Inc. v. Ford Motor Co., 429 F.2d 1197 (2d Cir. 1970); H. L. Peterson Co. v. Applewhite, 383 F.2d 430 (5th Cir. 1967); Albright v. Gates, 362 F.2d 928 (9th Cir. 1966); United States v. Southern Const. Co., 293 F.2d 493 (6th Cir. 1961); United Fruit Co. v. Standard Fruit & Steamship Co., 282 F. Supp. 338 (D.C.Mass.1968); Magna Pictures Corp. v. Paramount Pictures Corp., 265 F.Supp. 144 (C.D.Cal.1967); Berger v. Reynolds Metals Co., 39 F.R. D. 313 (E.D.Pa.1966).

■ This Court finds that plaintiff suffered no damages from the attempted enforcement of the state court judgment. Jurisdiction having been obtained over plaintiff's cause of action, this court has ancillary jurisdiction over defendant's compulsory counterclaim. Judgment is entered for defendant against plaintiff in the amount of $65,710.00 with interest on the notes signed by plaintiff. Defendant has shown no other actual damages and is not entitled to punitive damages. The United States Marshal is ordered to sell the named security to satisfy this judgment.

In rendering this decision the Court is not unmindful of the fact that to hold otherwise would be to leave the defendant bank with an actual out of pocket loss and the plaintiff with the unjust enrichment of cattle not owned by him. Further, there is substantial evidence that plaintiff has not properly cared for his livestock, that he has failed to brand many of the offspring, and that many of the cattle are unexplainably disappearing. The result of granting plaintiff an injunction without granting defendant relief on his counterclaim would be to cut off the credit to enrolled Indians living within the closed portions of the reservation.[4]

---

4. It appears, however, that such a result could still occur if an enrolled Indian should stay within the state judicial sys-

tem, in view of the holdings of the South Dakota Supreme Court.

This memorandum decision shall constitute the findings of fact and conclusions of law required by Rule 52 of the Federal Rules of Civil Procedure.